BENTLEY v. GARDNER et al.

(Supreme Court, Appellate Division, Fourth Department. November 22, 1899.)

1. LIENS—MAINTENANCE—ANNUITIES—FORECLOSURE.

In a suit by a grantor of land to enforce a lien thereon, reserved by the deed, for maintenance, and the payment of an annuity, a prayer for foreclosure and sale is appropriate.

2. SAME—MORTGAGES—RECORDING ACTS.

One accepting a mortgage is charged with constructive notice of a lien for maintenance and the payment of an annuity reserved by a recorded deed, which forms a part of the mortgagor's chain of title, though the deed was not recorded with the set of books required by 2 Rev. St. (9th Ed.) p. 1831, § 2, for the recording of mortgages or securities in the nature of mortgages, and section 3 precludes a grantee from taking advantage of the recording of his deed, if it appears "by any other instrument in writing" that it was intended as a mortgage, and such other instrument is not recorded.

Appeal from special term, Ontario county.

Suit by William Bentley against Elisha W. Gardner and others to enforce a lien on land for maintenance, and the payment of an annuity. From a decree declaring that defendant Gardner had a prior lien on the land, plaintiff appeals. Reversed.

For former opinion, see 58 N. Y. Supp. 824.

Appeal by the plaintiff from so much of the judgment as declares that the mortgage of the respondent Gardner is superior to the claim and equity of the plaintiff in the premises described in the complaint. Exceptions were filed by the plaintiff to the findings of fact and conclusions of law. On the 24th day of October, 1890, the plaintiff was the owner of 258 acres of land lying in the county of Ontario, which, by a quitclaim deed, he conveyed to his wife, Sarah Bentley, and to his son, Cassius M. Bentley, for a recited consideration of $20,000, no part of which was, in fact, paid. The deed was put upon record on the 27th of October, 1890, in the clerk's office of Ontario county. Plaintiff's

complaint alleges that in virtue of said deed the grantees went into possession of the real estate, and it further alleges: "That as part consideration of the execution and delivery of the aforesaid conveyance the said grantees, to wit, Sarah A. Bentley and Cassius M. Bentley, covenanted and agreed to and with this plaintiff that they would pay to him an annuity of two hundred dollars a year, payable on the 1st September and April in each year, the first annuity to be paid September 1, 1891, to the extent of $100, and $100 thereafter on April 1st and September 1st in each year; and also in consideration as aforesaid the said Sarah A. Bentley and Cassius M. Bentley further covenanted to and with said plaintiff that they would furnish him natural support, except clothing, at the home of the parties of the second part therein named." It is alleged that Sarah and Cassius failed and neglected to carry out, perform, and fulfill their part of the several covenants and agreements mentioned in said conveyance, and that they have not paid to him in all to exceed $300 upon the annuity which they agreed to pay yearly, and that they have not paid or offered to pay, furnished or offered to furnish, any part thereof for the past three years; and then it is averred that there remains due to the plaintiff "on account of the annuity the sum of eleven hundred dollars, and that $100 will be due and payable to said plaintiff on the 1st day of April, 1898, being one semiannual payment of said annuity, and also said sum of $720, which he has paid for his support. * * * Said sums are now actually due and payable to him in accordance with the aforesaid covenants and agreements, and that he now comes and insists that by reason of the premises that he is justly and equitably entitled to a lien upon the said described real estate and premises for the amount of moneys unpaid and payable to him, and that he has no remedy at law except to enforce his lien upon said described real estate." It is alleged that Sarah A. Bentley and Cassius M. Bentley, by an instrument in writing, conveyed, on the 27th of November, 1894, to Cassius M. Bentley, Alvin M. Bentley, Clarence D. Bentley, John M. Bentley, Delevan F. Bentley, Elvin E. Bentley, and Ida D. Bentley, all their right, title, and interest in and to the real estate and premises hereinbefore described, and mentioned in the conveyance of the 24th of October, 1890, and that the said grantees "agreed to pay to said plaintiff the same annuity, and to furnish and provide him with the same natural support, as the grantors in said first conveyance had previously covenanted and agreed to perform." The last-mentioned conveyance was recorded on the 18th of February, 1895, in Liber 206 of Deeds. The plaintiff alleges "that he has a just and equitable lien upon the said described real estate and premises, and every part thereof, and the right to enforce the said lien in this court." The complaint alleges that the defendants, including Elisha W. Gardner and Thomas Elliott, "have, or claim to have, some interest in or lien upon the said described real estate and premises, or some part thereof, which interest or lien, if any, has accrued subsequently to the lien of the said plaintiff." A prayer for foreclosure and sale is inserted in the complaint. The answer of the defendant admits that the plaintiff is the father of several of the defendants named, and was the husband of Sarah A. Bentley, and that she died on the 3d of December, 1894. The answer further admits that plaintiff, on the 25th day of October, 1890, executed a quitclaim deed to his wife, Sarah, and to his son, Cassius M. Bentley, of the premises described in the complaint, and that the deed was recorded on the 27th day of October, 1890, and that "the nominal consideration mentioned in said deed is $20,000." The answer of defendant Gardner contains numerous denials of other portions of the complaint. The defendant Gardner further admits that the plaintiff executed the deed of October, 1890, referred to, and then avers: "That, this defendant not being informed as to the provisions of said quitclaim deed, and having no knowledge of its provisions, and defendant having knowledge that said Cassius M. Bentley held said $15,000 mortgage upon said real estate, and he representing to defendant that said William Bentley had conveyed by quitclaim deed to him and his mother, Sarah A. Bentley, whatever interest he may have had in said real estate, and the said Cassius M. Bentley still being liable to this defendant upon his said undertaking as surety for said William Bentley to pay said judgment, and said judgment being a valid indebtedness against said William Bentley, and he being indebted to this defendant for the whole amount of said judgment

and interest thereon against him, and the said judgment being wholly unpaid and unsatisfied, and with the approval and consent of said William Bentley, as defendant alleges on information and belief, the said Cassius M. Bentley and Sarah A. Bentley did, on the 14th day of February, 1894, for the purpose of securing the payment to this defendant of said judgment against said William Bentley, execute and acknowledge and deliver to defendant their bond and a mortgage upon said real estate, in which bond they bind themselves, their heirs, executors, or administrators, jointly and severally, in the sum of $1,-. 297.30, to pay to Elisha W. Gardner, this defendant, the sum of $648.65. * * * The same terms of payment are included in said mortgage." The said mortgage was recorded on the 15th day of February, 1894. It is alleged that the defendant Gardner, contemporaneous with the execution of said mortgage, assigned the judgment against said William Bentley to said Cassius M. Bentley and Sarah A. Bentley, "but without their paying any consideration therefor, or giving any security for the same, except as contained in said bond and mortgage so executed to defendant as aforesaid." It is alleged that defendant Gardner's mortgage became a lien upon the real estate for the amount of $648.65 from the 4th day of February, 1894, in favor of the defendant Gardner, "paramount to and prior in law and equity to any alleged lien the plaintiff claims by his said complaint." The defendant Gardner alleges there is due to him on the said last-mentioned mortgage $600 and interest from the 1st of December, 1895, and demands judgment dismissing the plaintiff's complaint, and also adjudging that the defendant's mortgage is a lien upon the real estate "prior to and paramount to any alleged lien or rights the plaintiff may have or claim by virtue of the said deed, or anything contained therein, executed by him to Cassius M. Bentley and Sarah A. Bentley, or otherwise"; and also adjudging that the plaintiff has no lien or rights in said real estate "prior in law or equity to the lien or rights of defendant therein under his said mortgage." A reply was served by the plaintiff denying all of the defendant's answer which "purports or claims to be a counterclaim in his favor as against the plaintiff." The Allens recovered a judgment in justice's court in 1888 for $210, and from that an appeal was taken to the county court, and a new trial was had in the county court, and judgment entered for $645.86 on the 18th day of January, 1894. An undertaking was given when the appeal was taken which was executed by Cassius M. Bentley as surety for William Bentley. The Allens assigned their judgment to the defendant Gardner, and the defendant Gardner assigned the judgment to Cassius and Sarah contemporaneous with the execution of the mortgage to him. The special term held that the plaintiff had an interest in the lands, and an equity which could be foreclosed as against all the defendants, and granted judgment against all the defendants except Gardner, providing that a sale be had, and held that the sale should be subject to the mortgage of Gardner, and that his mortgage was a paramount lien upon the real estate described in the complaint.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

Henry M. Field, for appellant.
Elisha W. Gardner, in pro. per.

HARDIN, P. J. Plaintiff testified that when he delivered the deed of October, 1890, to his wife, Sarah, and his son, Cassius M., he received no other consideration than the stipulations found in the deed in respect to his annuity and support. The language of the deed in respect to the annuity to be paid to him and the support rendered is as follows:

"And the said parties of the second part agree to pay to the party of the first part an annuity of two hundred dollars ($200) a year, payable Sept. 1 & April 1 in each year, 1st annuity to be paid Sept. 1, 91, to the extent of $100, & $100 thereafter on April 1 and Sept. 1 in each year. Also natural sup-

port, except clothing, at the home of the parties of the second part. The said annuity is not assignable, and, if assigned, then the annuity is to be void. In case of sale of the herein-named premises, the party of the first part agrees to release said annuity from a lean on the property by being paid a sum to be ascertained on the principle of life annuities."

The conveyance, however, was made subject to a mortgage of $7,000, and at the time it was executed there was remaining on the premises another mortgage of $15,000, which mortgages had been executed by the plaintiff. The recited consideration for the deed was $20,000. There is some evidence that the property was worth $20,000. There was some evidence given that the property did not exceed in value one-half that sum. The prayer of the plaintiff's complaint to enforce his equity or interest in or lien upon the lands described in the complaint was appropriate. Perry v. Board, 102 N. Y. 99, 6 N. E. 116.

The principal question to be determined upon this appeal relates to the mortgage taken by the respondent for $648.65. The respondent testifies that at the time he took the mortgage he had no actual knowledge of the stipulation, reservation, or lien found in the deed from William to his wife and son, of the annuity, or the covenant to support William. However, when the respondent took his mortgage the deed had been on record about four years, and contained the stipulation as to the annuity and support. The respondent knew that a conveyance had been made by William to Sarah and Cassius Bentley, and that they claimed title through the medium of the deed of William to them. The respondent made some examination in the clerk's office in respect to the mortgages upon the premises prior to or at the time he received his mortgage. He did not examine the deed nor the record thereof, according to his testimony. There is a little evidence to the effect that he was informed of the $200 annuity. That evidence is contradicted by the respondent, and apparently was not credited by the special term. In determining the question it may be assumed that he had no actual knowledge or actual notice of the stipulation found in the plaintiff's deed to his wife, Sarah, and his son, Cassius.

In Bank v. Delano, 48 N. Y. 336, it is said:

"The principle of equity is well established that a purchaser of land is chargeable with notice, by implication, of every fact affecting the title, which would be discovered by an examination of the deeds or other muniment of title of his vendor, and of every fact as to which the purchaser, with reasonable prudence or diligence, ought to become acquainted. If there is sufficient contained in any deed or record, which a prudent purchaser ought to examine, to induce an inquiry in the mind of an intelligent person, he is chargeable with knowledge or notice of the facts so contained."

In Knapp v. Hall (Sup.) 23 N. Y. Supp. 1112, Haight, J., said:

"A purchaser of lands is chargeable with notice of facts affecting the title which could be discovered by an examination of the deeds or other muniments of title; and where there is an outstanding mortgage or lien unrecorded, and he has had notice of its existence, it becomes his duty to inquire, and ascertain the extent of the rights of the person holding the same."

In Schwinger v. Hickok, 53 N. Y. 285, it was said:

"It is doubtless true that a person claiming a right or title under a conveyance or an instrument in execution of a power is, in general, chargeable with

notice of any infirmity in his title disclosed by the instrument under which he claims, or of which, by reasonable diligence, he would have become acquainted."

In Acer v. Westcott, 46 N. Y. 384, it was held:

"A recital, in a deed forming a link in the chain of title, of any facts which should put a subsequent grantee or mortgagee upon inquiry, and cause him to examine other matters, by which a defect in the title would be disclosed, is constructive notice of such defect. But the basis of this rule is negligence, and it is only applicable to cases where the purchaser or incumbrancer is chargeable with gross negligence in not making the examination."

See McPherson v. Rollins, 107 N. Y. 322, 14 N. E. 411.

The language found in the deed amounts to a condition subsequent. Birdsall v. Grant, 37 App. Div. 349, 57 N. Y. Supp. 705; Wheeler v. Dunning, 33 Hun, 205. It would have been competent for the plaintiff to waive the conditions subsequent, and such waiver might have been evidenced by an execution of a mortgage by him without the limitations and conditions in the deed. Wheeler v. Dunning, supra. Assuming that it was the duty of the respondent to examine the deed, the muniment of title under which Cassius and Sarah assumed to hold the property in question, it must be supposed that, had such examination been made, he would have ascertained the equitable rights of the plaintiff remaining in the lands. He, being charged with the duty of examining, is charged with the knowledge or information which an examination would have developed. Williamson v. Brown, 15 N. Y. 354; Anderson v. Blood, 152 N. Y. 293, 46 N. E. 495. In the latter case it was said:

"Where a purchaser of land has knowledge of any facts sufficient to put him on inquiry as to the existence of some right or some title in conflict with that he is about to acquire, he is presumed, either to have made the inquiry, and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim to be considered a bona fide purchaser."

If the respondent had read the record of the deed in the clerk's office prior to taking the mortgage from his mortgagors, he would have discovered the equities of the plaintiff in the premises.

Under the facts and circumstances disclosed in the case we think it must be held that the respondent is not an incumbrancer in good faith, for valuable consideration, without notice of the equities of the plaintiff in the lands. The plaintiff's equities, therefore, being found to exist, and prior in point of time to the mortgage of the respondent, should prevail. Binghamton Sav. Bank v. Binghamton Trust Co., 85 Hun, 75, 32 N. Y. Supp. 657, and cases there cited; Maroney v. Boyle, 141 N. Y. 462, 36 N. E. 511. The case in hand differs from Hulett v. Whipple, 58 Barb. 224. In that case there was a search upon the records of the clerk's office, and the premises were found to be free from any incumbrance; and, besides, that case was placed upon the ground that there had been a waiver of the equitable lien for unpaid purchase money by the peculiar state of facts and circumstances surrounding that particular case.

2. It is claimed that the respondent's mortgage should prevail, because the deed executed by the plaintiff to his wife and son was only recorded as a deed, and was not recorded in the mortgage book. In 2 Rev. St. (9th Ed.) p. 1831, § 2, it is provided, viz.:

"Different sets of books shall be provided, by the clerks of the several counties, for the recording of deeds and mortgages; in one of which sets, all conveyances absolute in their terms, and not intended as mortgages, or as securities, in the nature of mortgages, shall be recorded; and in the other set, such mortgages and securities shall be recorded."

In section 3 it is provided that:

"Every deed conveying real estate, which, by any other instrument in writing, shall appear to have been intended, only, as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage; and the person for whose benefit such deed shall be made, shall not derive any advantage from the recording thereof, unless every writing, operating as a defeasance of the same, or explanatory of its being designed to have the effect only of a mortgage, or conditional deed, be also recorded, therewith, and at the same time."

In the case in hand there was not "any other instrument in writing" by which it was made to appear that the deed was only intended as a security in the nature of a mortgage. We think the provisions of the statute to which reference has been made do not relieve the respondent from his negligence in omitting to examine the deed under which his mortgagors derived their title to the premises. In Patman v. Harland, 17 Ch. Div. 353, it was said:

"If you have notice of a deed relating to title, and which forms part of a chain of title, you have notice of the contents of the deed, and it is no excuse, for not asking to look at it, to say you were told that the deed contained nothing which was necessary for you to look at. Where you know of a deed, it is no answer to be told that it does not prejudicially affect the title; and, if it does affect the title, you are bound by its contents."

Under the evidence found in the appeal book it is very apparent that the respondent, at the time he received the mortgage in question, was fully aware that it was through the medium of the plaintiff's deed that the plaintiff's wife and son had derived whatever title or interest they had in the premises; and the facts disclosed by the record indicate that the respondent had sufficient information to put him upon inquiry, and he must be presumed to have made the inquiry, and ascertained the actual facts, or, by reason of his negligence, failed to ascertain the facts; and therefore he is not to be considered an incumbrancer in good faith without notice. He did not part with fresh money. He did not part with a fresh consideration. He held a judgment which was recovered subsequent to the execution of the deed of the plaintiff, and was not, in law or in equity, an actual lien upon the premises at the time the respondent assigned to his mortgagors. It is nowhere alleged that the respondent was induced by the fraud of the mortgagors to accept the mortgage in lieu of the judgment which he held. Nor is there any evidence in the case tending to show that Cassius, by the execution of the mortgage to the respondent, intended to assign any interest in the mortgage for $15,000 which he then held upon the premises. It may be that upon another trial the respondent may be able to furnish evidence sufficient to induce the court to find that he is equitably entitled to an assignment of an interest in the $15,000 mortgage sufficient to compensate him for the judgment which he assigned. However, upon that question we express no opinion.

The views already expressed, if approved, lead to the conclusion

that the judgment, so far as it is appealed from, should be reversed, with costs to the appellant to abide the event.·

Judgment, so far as appealed from, reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except ADAMS, J., not voting.