## GOULD v. PARTRIDGE.

(Supreme Court, Appellate Division, Fourth Department.   May 22, 1900.)

1. WATER POWER—CONVEYANCE—COVENANT—EQUITABLE EASEMENT.

Defendant's grantor, being the owner of vacant lands to which a water power was appurtenant, sold a portion of the lands to plaintiff's grantor, together with sufficient power from the water wheel to propel machinery to the limit of 10 horse power, under covenant to keep the water wheel in repair.   The grantee in this conveyance covenanted to contribute ratably to the maintenance of the water wheel, with others using the same. *Held,* to create an equitable easement annexed to plaintiff's land, the right to the enjoyment of which plaintiff might enforce against defendant by action.

2. SAME—GRANTEE OF SERVIENT ESTATE—POSSESSION WITH NOTICE—ACQUIESCENCE—ESTOPPEL.

Where a grantee takes possession of lands burdened with an easement through his grantor's conveyance and covenant, of which he had notice, such covenant constituting part of the consideration in the grantor's prior conveyance, and a practical construction is given the covenant by the grantee by acquiescence in the burden of the estimate for a long period of years, the grantee will not be permitted to finally escape the burden of the easement by the plea that the covenant did not in terms bind his grantor's assigns and so did not run with the lands so as to lay a foundation for an action at law.

Appeal from special term, Seneca county.

Action by Hannah B. Gould against Ellen B. Partridge to construe a deed and for damages.   From an interlocutory judgment overruling defendant's demurrer to plaintiff's complaint, defendant appeals.   Affirmed.

Prior to the year 1872 the Phœnix Mills, a domestic corporation, was the owner in fee and possessed of certain premises located upon the bank of Seneca river, in the village of Seneca Falls, and also of a water power appurtenant thereto.   Upon the westerly end of these premises there was a building known as the "Stone Mills" or "Jewett Building," where this water power was utilized.   The remainder of the premises was vacant, but the same had been surveyed into lots, which were offered for sale, together with power to be conveyed from the Jewett Building.   On the 20th day of May, 1872, the Phœnix Mills conveyed to one Chauncey B. Howe, by warranty deed, one of these lots, describing the same by metes and bounds, "together with sufficient power from a wheel in the old Stone Mills or Jewett Building (subject to the elements) to turn a shaft and propel machinery in the basement of any building to be erected on the premises hereby conveyed not requiring more than ten horse power * * *:   and provided, also, that said shaft shall be put up at the sole expense of the party of the second part, and shall be properly connected with the shaft running from said Mills, and shall be made and put up in a manner to be approved by the party of the first part, and said shaft and machinery shall at all times be kept in good condition by said party of the second part, and shall be operated in a proper and economical manner, and shall be so constructed and maintained as to afford the owner of the adjoining lots on the east a good, safe, and convenient connection therewith; and said power is to be used in common with all other persons who shall be entitled to power from said wheel. * * * This grant is also made and accepted subject to the following exceptions, reservations, easements, and conditions: * * * Said party of the first part shall keep said wheel in said mill in good condition, and operate the same economically, and maintain said shaft of proper dimensions to the west line of said lot, affording said party of the second part a good connection therewith at his west line, reserving the right at all times of going on said premises to repair said shaft at the expense of said party of the second part if the same shall be permitted to be out of repair by said party of the

second part. And it is further conditioned that said party of the second part shall erect and complete a building on said premises during the present season, and substantially according to the plan now prepared therefor, and of not less value than that now mentioned on said plan. And it is further agreed that the party of the second part shall at all times contribute pro rata with each of the other parties using the same towards the expense of keeping in repair and maintaining or rebuilding the wheel and fixtures connected therewith in said Stone Mills or Jewett Building, used to give said power to said party of the second part." Subsequently Howe erected a building upon the premises thus conveyed to him, the title to which thereafter came to the plaintiff by sundry mesne conveyances. On the 12th day of April, 1873, the Phœnix Mills conveyed to Le Roy C. Partridge and others all of the premises then remaining to it, including the Stone Mills or Jewett Building, together with all the water power, water-power rights, hydraulic privileges, and water rights appurtenant thereto, but excepting and reserving the rights and privileges which had been conveyed to Howe. Power was furnished to Howe and his grantees for many years by the original grantor and subsequent grantees, including the defendant, who by mesne conveyances became the owner of the premises upon which is located the Jewett Building; but, disputes arising as to the force and meaning of the stipulations contained in the Howe deed, the defendant finally, and in the year 1889, refused to perform the same. This action was thereupon brought to obtain a construction of the defendant's obligations under the Howe deed, and incidentally to recover such damages as the plaintiff might be found entitled to. The defendant demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled at special term, and from the judgment entered thereon this appeal is brought.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

William S. MacDonald, for appellant.

Charles A. Hawley, for respondent.

ADAMS, P. J. Upon the foregoing facts the counsel for the defendant contends that the provision of the Phœnix Mills deed for furnishing power to Howe, its grantee, should be treated simply as a personal contract or covenant to sell power from an appliance then upon the premises; that, while possibly it might be regarded as in the nature of an easement to take from the wheel in the Stone Mills force or energy to the extent of certain specified horse power, it was in no sense a grant of realty or of any interest therein. In short, that the provision, by whatever name it may be called, does not amount to a covenant which runs with the land, and that consequently the defendant, while she may be enjoined from interfering with the plaintiff's enjoyment of such privileges as it was designed to confer, cannot be compelled to perform any affirmative act for their maintenance. This contention was supported by an exceptionally forceful argument, in the course of which it was asserted that inasmuch as no privity of estate existed between the covenantor and covenantee, and none was created at the time the covenant was made, the case falls directly within the principle of Cole v. Hughes, 54 N. Y. 444, and Scott v. McMillan, 76 N. Y. 141. Upon the other hand, however, it was quite as earnestly contended that all the elements which are essential to the creation of a running covenant, including a privity of estate, were present at the time the agreement in question was entered into, and that consequently the burden or liability arising therefrom is not

confined to the original covenantor, but passes to subsequent grantees as an incident to the land conveyed. The controversy thus formulated presents a most interesting question, in the discussion of which counsel have certainly displayed a vast amount of labor and research; and did we suppose that a determination of the issues presented upon this appeal would impose upon us the necessity of defining the term "privity of estate" as that term is here used, we should shrink from a task which would bring to our judgment "a judicial quarrel almost as venerable as the common law itself, and open yet to vigorous dispute." Finch, J., in Mygatt v. Coe, 142 N. Y. 78–82, 36 N. E. 870, 24 L. R. A. 850; Rawle, Cov. (5th Ed.) § 203, note 2. But haply, in the view which we are inclined to take of the case, a discussion along the lines pursued by counsel becomes a work of supererogation. The purpose and intent of the parties to the original agreement are, we think, perfectly obvious. The Phœnix Mills was the owner of a valuable water privilege, as well as of the means and appliances for utilizing the same. It was also the owner of a tract of land for which it had no particular use. To meet this condition of affairs it subdivided its surplus land into parcels and then sold the same to various parties. In order, however, to enhance the value of the land thus placed upon the market, and induce purchasers to buy, the company agreed to furnish a certain amount of power with each parcel sold. As a consequence, the land with this incident attached to it found ready sale, and the purchasers thereof immediately set about to erect buildings for manufacturing purposes upon their respective parcels, in reliance, doubtless, upon the right to the water power which their several grants secured to them. In these circumstances, if, as claimed by the plaintiff, there was a community of interest or a privity of estate between the original grantor and grantees, the covenant made by the former would unquestionably be one which would run with the land, and one for the breach of which an action at law could be maintained by the covenantee or his grantees. But, even in the absence of any community of interest or privity of estate, it has been held that the owners of land may by agreement create mutual easements for the benefit of each other's land, which will be enforced in equity; that an easement of this character can be created by grant, and that the right to its enjoyment will in like manner pass as appurtenant to the premises in respect of which it was created. In discussing a similar proposition in the American note to Spencer's Case, 1 Smith, Lead. Cas. (6th Am. Ed.) 167, it was said:

"But although the covenant, when regarded as a contract, is binding only between the original parties, yet, in order to give effect to their intention, it may be construed by equity as creating an incorporeal hereditament (in the form of an easement) out of the unconveyed estate, and rendering it appurtenant to the estate conveyed; and, when this is the case, subsequent assignees will have the right and be subject to the obligations which the title or liability to such an easement creates."

The principle thus enunciated has, we believe, been recognized and enforced by the courts with great uniformity from an early day down to the present time; and when it is applied to the facts of this case it seems to dispose of the defendant's contention, regardless of her

major proposition, as to which we express no opinion. Norman v. Wells, 17 Wend. 136; Parken v. Nightingale, 6 Allen, 341; Morse v. Aldrich, 19 Pick. 449; Trustees, etc., v. Lynch, 70 N. Y. 440; Phœnix Ins. Co. v. Continental Ins. Co., 87 N. Y. 400; Hart v. Lyon, 90 N. Y. 663; Nye v. Hoyle, 120 N. Y. 195, 24 N. E. 1. In this connection it is proper to suggest that in the case last cited it was said that the views there expressed do not conflict with Cole v. Hughes and Scott v. McMillan, supra. A distinction is, however, sought to be drawn between the cases above referred to and the one under review, because, as it is asserted, in the former the covenants were in terms between the parties and their respective heirs and assigns, and they were connected with the subject of the grant and entered into the value thereof, while in the latter these elements are all absent. It is true that the covenant in the deed to Howe does not in express terms bind the grantor, its "heirs and assigns"; but the defendant took possession of the premises burdened with the covenant, and she thereby became subject, as grantee or assignee, to its terms and conditions, although not bound by express words. Denman v. Prince, 40 Barb. 213; Mygatt v. Coe, supra. As regards the other distinguishing features which are said to exist it is necessary only to advert to the fact, which we think sufficiently appears, that the covenant in question was connected with, and without doubt entered into, the consideration of the grant from the Phœnix Mills to Howe. The defendant took her title to the premises owned by her with actual and full notice of the covenant in the Howe deed, and of all the equities arising therefrom. Moreover, she and her predecessors in title gave practical construction to the language and obligations of that covenant by sustaining the burden which it imposed for a long term of years; and in view of these circumstances it would, as was said by Allen, J., in Trustees, etc., v. Lynch, supra, "be unreasonable and unconscientious to hold [her] absolved from the covenant in equity for the technical reason assigned that it did not run with the land so as to give an action at law." We think the interlocutory judgment appealed from should be affirmed, with the usual leave to answer.

Interlocutory judgment affirmed, with costs, with leave to the defendant to withdraw her demurrer and answer upon payment of the costs of the demurrer and of this appeal. All concur.