CATHERINE COLLINS, Appellant, *v.* BUFFALO FURNACE COMPANY, Respondent.

*Land laid out on a map into lots and streets — purchasers of the lots are entitled to have the streets kept open to the full width — their right is not dependent on the acceptance of the streets by the public — the fact that an owner of a lot sued for obstructing the street sells his lot does not require a dismissal of the complaint — when damages will be given rather than a mandatory injunction.*

Where the owners of a tract· of land in a city cause a map thereof to be filed, subdividing the plot into streets and lots, work, grade and use the streets to the full extent delineated upon the map, and convey lots abutting upon the streets by deeds expressly stipulating that the streets should remain public highways, the owners of the lots abutting upon such streets have a right of way therein, notwithstanding the fact that the streets were never accepted by the public authorities and, for that reason, never became public streets. The extent of such right of way is not measured by the abutting owner's needs, but he is entitled to have the streets kept open and unobstructed for the full width as delineated upon the map.

Where the owner of one of the abutting lots brings an action against the lessee of another of such lots to restrain the latter from obstructing the street, the fact that, during the pendency of the action, the defendant and his lessor convey their property to a corporation, which is not made a party to the action, and that the plaintiff fails to show any damages, does not justify the court in dismissing her complaint.

*Semble,* that if it appeared that the cost of removing the obstruction would be out of all proportion to the damages which the plaintiff sustained by reason of the obstruction of her right of way, the court might award damages in lieu of a mandatory injunction, but that if the defendant desired such relief, it was incumbent upon it to establish the facts entitling it thereto.

WILLIAMS, J., dissented.

APPEAL by the plaintiff, Catherine Collins, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Erie on the 3d day of September, 1901, upon the decision of the court, rendered after a trial at the Erie Special Term, dismissing the complaint upon the merits.

*George H. Kennedy,* for the appellant.

*Tracy C. Becker,* for the respondent.

SPRING, J. :

In the early sixties Dean & Dewey owned a large tract of land in the city of Buffalo on lot No. 192, which they caused to be plotted and subdivided into lots. Katherine street was then a public street of the city extending southerly to lot 192, but not through any of the lands composing the Dean & Dewey tract. Upon a map which they caused to be made, and a copy of which was delivered to the plaintiff's predecessor in title with her conveyance, Katherine street was continued through the entire tract, and four parallel streets, each fifty feet in width, intersected it from the east, the northerly of which was Ensign street. The map does not seem to have been filed in the county clerk's office of Erie county, but it was known by several of the surveyors of the city who had copies of it, and data from it, including its streets, were used by the city authorities for convenience in making assessments upon the tract. Katherine street was never in fact extended by the authorities, nor was Ensign street accepted by them. These two contemplated streets were, however, worked and graded up under the direction of Dean & Dewey, and were shaped and used as streets as delineated

upon the map, and were "clean and clear" and passable for teams. In 1863 Dean & Dewey conveyed to Ann Collins, then the wife of James Collins, a lot fronting on Ensign street, 40 by 140 feet, for $300, and in 1865 a house was erected on the lot which was occupied by Collins and his family until 1887, when it was burned to the ground. Collins' wife having died, he married the present plaintiff in 1869, who acquired title and still holds it. When the land was plotted there was a rolling mill in that vicinity west of Katherine street, and apparently the owners of the tract expected that they could sell lots to employees of that mill, but the plant discontinued its operations and the plan did not fructify into any considerable development. In the Lovejoy-Emslie map, which is the one prepared at the instance of Dean & Dewey, the tract is plotted into lots and blocks facing the respective streets, and which are delineated as fifty feet in width, and the conveyance to Ann Collins is based upon this map, being lot 32, block A, fronting on Ensign street.

The defendant's title also comes from Dean & Dewey. In 1863 these original owners conveyed to Everard Palmer and others a portion of the lands occupied by the defendant at the time of the commencement of this action and the deeds contain this reservation: "Excepting and reserving that Katherine street extended southerly through all the land hereby conveyed shall forever remain a public highway or street, and especially for the use of the owners and occupants and their assigns of the residue of lot 192, with the distinct and positive agreement and understanding that, upon the opening of said street as aforesaid, no claim for damages or compensation shall be made by the said parties of the second part or by anyone claiming under them, of or against either of the said parties of the first part or the City of Buffalo for or on account of the opening thereof."

In 1863 the same grantors, by separate deeds, conveyed another portion thereof to Bronson C. Rumsey, with this reservation: "Excepting and reserving that Katherine Street, as laid out upon the subdivision plan of lot 192, made September 5, 1863, Peter Emslie, surveyor, shall forever remain a public highway or street."

And in another conveyance between the same parties of a portion of this land made in 1870, the deeds recognize this map and survey,

and provide, also, that "Ensign Street shall forever remain a public highway or street." In another deed from these grantors to Edward S. Warren, executed in 1860, of the northwesterly part of lot 192, occurs the following reservation: "Excepting a strip 50 feet wide on the northerly side of same for the exclusive use of the owners and occupants of the residue of said lot 192 as a private way until Katherine Street shall be opened as a public street or highway to the line of said lot 192."

The record does not show just when the Wadsworth Iron Works acquired title, nor are the contents of its deed given, but in 1872 it conveyed to the Union Iron Company a large tract, including three parcels in lot 192, and extending on both sides of Katherine street, and makes the following reservation: "Excepting and reserving that Katherine Street aforesaid in the said city extended southerly through the lands hereby conveyed shall forever remain a public highway or street." All of these deeds were recorded about the time they were severally executed.

The defendant leased of the Union Iron Company in 1892, and continued in possession as such lessee until after the commencement of this action. It has been carrying on the manufacture of pig iron, and has erected in and across Katherine street machinery and appliances used in connection with its business. It has a hoist for elevating coal, reaching entirely across the so-called street, and supported by solid brick and iron framework therein. It has constructed an open sewer, running across Katherine street and down Ensign street, in depth about two feet, and from two to three feet in width. In Katherine street it has erected a water closet, and the sewage and refuse from this and its blast furnace run along in this open sewer, and it has piled its ore in said Katherine street and substantially obstructed it for its entire width. That it has proceeded on the assumption that it could use the land anyway it desired in disregard of the reservations creating easements is quite obvious.

When the defendant began obstructing the streets it appreciated the fact that the plaintiff possessed some rights over this land, and for a time kept a gate for her accommodation and sought to provide for her ingress and egress. This proved quite burdensome, and for a number of years it leased her lot. Now, however, the lease has expired and the plaintiff claims she wishes to erect a house on

her lot, and has brought this action to compel the defendant to remove its obstructions from the so-called streets.

Both of these parties acquired title from the same source, and the land was burdened with the easement of both in these streets, as delineated upon the map and set out in the conveyances. (*Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *Hennessy* v. *Murdock*, 137 id. 317; *Haight* v. *Littlefield*, 147 id. 338.)

The conduct of Dean & Dewey in setting apart these contemplated streets and providing for their use as such was, as between them and their grantees, and also among the latter, tantamount to a dedication of the streets. While acceptance was essential to constitute them public streets, yet the easement in the parties in whom it was created and in their grantees and privies, was effectual, and cannot be withdrawn or infringed upon. In *Haight* v. *Littlefield* (*supra*) the parties had purchased from a common grantor who had mapped the tract delineating a street fifty feet in width, and which was referred to and recognized in the conveyances. The way was never accepted by the public authorities and had not been used as a public street. The street there contemplated was an extension, and it was in one of the conveyances dedicated for that purpose. The Court of Appeals held this created an easement in the strip of land outlined as a street, adding (at p. 342): " Whether it was then a public street or not, this easement or right of way was attached as an appurtenance to the land conveyed, and part of the thing granted, and thereupon the plaintiffs acquired the right to insist at all times that the way be kept open and unobstructed for the benefit of their premises, and as a means of access to and from the same. It is a property right, the destruction or invasion of which constitutes a ground of relief in equity. Irrespective of the rights of the public in a public street, the owners of lots bounded upon a street have, under the circumstances disclosed, a right of way as between themselves and their grantor."

It is urged on behalf of the respondent that a right of way adequate for the needs of the plaintiff is still provided, and that the defendant is willing to give her some sort of access to and from her lot. Mr. Baird, who was vice-president of the defendant and in charge of its works, and knew of Katherine street, testified that the defendant had used these strips of land " in any way (they) wanted

to," and that all it endeavored to do was to provide the plaintiff "and anybody else some egress to their lot some other way." The plaintiff's rights are tangible and definite, and she is not obliged to accept a passage to her place where the defendant may elect. That came to her inseparably connected with her conveyance, and its precise location and its width belong to her as a property right. (*Niagara Falls* v. *N. Y. C. & H. R. R. R. Co.*, 41 App. Div. 93; affd., 168 N. Y. 610; *Matter of Village of Olean* v. *Steyner*, 135 id. 341.)

In the latter case the parties had purchased with reference to the Gosseline map, upon which a piece of land had been portrayed as a street. The court say (at p. 345): "All the parties have recognized the Gosseline map, and bought and sold with reference to it, and enough is shown to establish in them a right to have the strip kept open to its full width, after the manner and with the characteristics of a village street."

The case in 41 Appellate Division, 93 (*supra*), contains an exhaustive review and analysis of the authorities, and reasserts the doctrine where parties acquire title from a common grantor by separate deeds, and a well-defined easement is recognized and made a part of the conveyance, that either party is "estopped * * * from successfully urging * * * that an easement common to both was not created in the strip of land * * * for its entire width."

It appeared on the trial that after the commencement of the action the defendant and its lessor conveyed and transferred their property to another company which apparently was an organization composed in part at least of the membership of the two corporations referred to. The plaintiff did not show any damages to her premises by reason of the interference with her easements, relying upon the right given by her conveyance. The court dismissed the complaint apparently upon the ground that no damages had been shown and that the removal of the obstruction could not be enforced against the present owner. No defense setting forth the transfer of title was contained in the answer, and concededly it was made during the pendency of the action. We are satisfied the court erred in dismissing the complaint. The purchaser from the defendant acquired title presumptively with full knowledge of the easements

which plaintiff possessed, and it assumed the burden of removing the obstructions when it purchased. It might have been proper to suspend the trial and require the new company to be made a party, but to dismiss the complaint and impose costs upon the plaintiff who was properly in court and with a cause of action on the merits was not warranted by the facts. If she was willing to forego her damages and be satisfied with the removal of the obstructions which interfered with the full measure of the rights vested in her by the deed the defendant ought not to be heard to complain. It certainly was no reason for dismissing her complaint and saddling upon her a bill of costs.

Nor was it incumbent upon the plaintiff to show the decrease in value to her lot by reason of the cutting off of her easements over this strip of land. The loss of a fixed road to and from her land was obviously a valuable right, and to measure it in dollars and cents was unnecessary. When it is apparent that nominal damages only have been sustained, then equity in certain cases may not retain jurisdiction solely for the purpose of awarding them where the chief relief sought cannot be granted. Here, however, approach to the lot is essential to its use and enjoyment, and if that access is by an unmistakable way, the more profitable inevitably must be that use than if dependent upon the caprice of the one who is responsible for obstructing the easement. The plaintiff made a case on the principal ground and the damages were merely an incident.

If to cause the defendant to remove these obstructions is out of all proportion to the damages which would be sustained by the plaintiff because of the blocking up of her right of way, then it may be the court in its discretion might award damages in lieu of imposing upon the defendant the large expense which the removal of such obstructions would entail. If the defendant desired any such relief, however, the burden was upon it to show the facts which would justify the court in adopting that course.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

McLENNAN, HISCOCK and DAVY, JJ., concurred; WILLIAMS, J., dissented.

Judgment reversed and new trial ordered, with costs to the appellant to abide event.