BLENIS v. UTICA KNITTING CO.

(Supreme Court, Trial Term, Oneida County. May, 1911.)

1. EASEMENTS (§ 17*)—CREATION—ALLEYWAYS—PLATS.

Where an owner of land laid it out into distinct lots with intersecting streets and alleys and sold the lots with reference to such streets and alleys, his grantees or successors could not afterwards be deprived of the benefit of the easement of having the streets and alleys kept open as a property right.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 45–49; Dec. Dig. § 17.*]

2. EASEMENTS (§ 24*)—CITY LOTS—ALLEYS—APPURTENANCES.

Where land was laid out into lots and sold with the right to use an adjoining alley reserved and shown on the plat, the easement to use the alley, having attached to the land, passed with it irrespective of privity into all grantees as an incorporeal hereditament rendering it appurtenant to the estate conveyed and giving to subsequent grantees all the rights and subjecting them to all the obligations which the title or liability to such an easement involves.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 64–69; Dec. Dig. § 24.*]

3. EASEMENTS (§ 30*)—RIGHT TO ALLEYWAY—LOSS—ABANDONMENT.

An easement to use an alleyway appurtenant to plaintiff's lot could not be lost by mere nonuser for any length of time, nor by anything short of an intention on the part of plaintiff or his grantors to abandon the way unless others had been led by such acts to treat the servient estate free from the servitude, though the easement might be extinguished by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

abandonment and nonuser for a period of 20 years under circumstances showing an intention to surrender the easement.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 77–79; Dec. Dig. § 30.*]

4. EASEMENTS (§ 67*)—OBSTRUCTION—ACTION—PARTIES.

Where plaintiff owned a lot and an appurtenant easement in the use of an adjoining alleyway which defendant had obstructed by a building, other lot owners having a legal right to use the alley were not necessary parties to a suit by plaintiff to recover damages for the obstruction of his easement and to compel the removal of the building as a nuisance.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 139, 140; Dec. Dig. § 67.*]

5. TAXATION (§ 732*)—TAX SALES—RIGHTS OF PURCHASER—INCUMBRANCES.

The statutes relating to tax sales in Oneida county, providing that a purchaser at such sales obtains an absolute title free from all incumbrances, only invests the purchaser with the title that the owner of the property had free from liens by way of incumbrances placed thereon, and does not free the property in the hands of such purchaser from a servitude or easement acquired over it by others prior to the levy of the tax for which the property has been sold.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1465–1468; Dec. Dig. § 732.*]

6. EASEMENTS (§ 61*)—ALLEYWAYS—ENFORCEMENT.

Where an easement of an alleyway was created as part of a scheme for the improvement of lots in a city, and land for the alley was reserved in the deed to the lot owners, the covenant or restriction was a part of the general scheme for the improvement of the property and was enforceable by any grantee as against any other on the theory that there was mutuality of covenant and consideration which bound each.

[Ed. Note.—For other cases, see Easements, Dec. Dig. § 61.*]

Action by Frank L. Blenis against the Utica Knitting Company to recover damages for the obstruction of a lane or alleyway by a building of the defendant, and to compel the removal thereof. Judgment for plaintiff.

See, also, 128 N. Y. Supp. 1113.

P. H. Fitzgerald, for plaintiff.
Dunmore & Ferris, for defendant.

PURCELL, J. The facts out of which this case arose may be briefly stated as follows:

On the 31st day of December, 1889, one Edward D. Mathews became the owner by purchase at sheriff's sale of a considerable tract of land in the city of Utica, N. Y., which he shortly thereafter caused to be laid out in blocks and lots by numbers and streets and avenues by name. This map in lots subsequently sold by him he referred to as being one which was filed in his own office and known as "Map No. 2 of Utica Highlands." The map in question was not filed in the clerk's office of Oneida county by Mathews, but it was so filed by his general assignee, to whom he assigned in August, 1893. One of the blocks laid down on this map was called block 2, faced easterly on "Mathews avenue," so called, and lay between Erie street northerly and Whitesboro street southerly. This block he divided into 16 lots; 13 of them fronting easterly on said Mathews avenue and

3 on Whitesboro street. Those facing on Mathews avenue, with the exceptions of Nos. 1 and 2, had a frontage of 26 feet and a depth of 100 feet. The 2 referred to had a frontage of 36 and 30 feet, respectively, and a depth of 100 feet on the southerly side and 106 $^{7}/_{12}$ feet along Erie Street. The numbering of the lots commenced at Erie street and continued consecutively from 1 to 13 towards Whitesboro street, and the 3 remaining lots faced on Whitesboro street; the rear thereof extending back to said lot 13. The original map was not produced on the trial, but secondary evidence of it was given showing that a lane or alleyway was laid down on it running along the rear of all said lots from Erie street to lot No. 13, a width of 5 feet, and between No. 13 and the lots facing on Whitesboro street (14, 15, and 16) a width of 10 feet to said Mathews avenue; 5 feet being taken off the southerly side of lot 13 and 5 off from the rear of lots 14, 15, and 16.

On the 1st day of October, 1892, Mathews and wife, by deed dated that day and executed on December 28th of the same year, conveyed to Norwalk Hat Manufacturing Company, a domestic corporation, lots numbered "1, 2, 3 and part of 4, in block No. 2, as represented on said map." Following the description of the land in this deed is found the following language:

"Excepting and reserving therefrom a strip of land ten feet wide from the rear of said premises hereby conveyed to be used as an alley or lane named on said second map for the use of the owners and proprietors of said lots in said block No. 2 forever, in common with the parties of the second part hereto. * * * Said alley as shown on map No. 2 begins at Erie street and it is hereby understood and agreed that the said party of the second part, their successors and assigns, shall keep the said lane or alley clean and free at all times from any obstructions and obstacles and ice and snow and will never obstruct or place anything therein."

On July 29, 1901, the Norwalk Hat Manufacturing Company by its deed duly executed, granted, and conveyed to the defendant Utica Knitting Company all the said real property that had been conveyed to it by said Mathews; the deed containing the same exception and reservation as to said alley or lane found in the Mathews deed and above quoted.

On March 27, 1893, Mathews and wife, by deed duly executed, conveyed to one Samuel Goodwin with other lands said lots 15 and 16 in block 2, fronting on Whitesboro street; reference being made to said map, and excepting and reserving therefrom "five feet to be used as an alley or lane named as on second map."

Reference is made to this deed for the purpose only of showing the scheme or plan adopted by Mathews with reference to maintaining an alley or lane along and around the said lots in said block 2.

On the 10th day of May, 1893, the said Mathews and wife, by their deed duly executed on May 18th, conveyed to one Edward Kanaley, with other lands, lots Nos. 5, 7, 9, 11, and 13 in said block No. 2 fronting on said Mathews avenue; reference in said deed being made to said "second map" and further describing the lots more particularly and stating that each had a frontage of 26 feet and a depth of 100 feet, using at the close of the description the words:

"Excepting and reserving from the rear of said lots 5, 7, 9, 11 and 13 in block 2, —— feet to be used as an alley or lane and five feet from the southerly side of said lots 13 to be used as an alley or lane."

By this deed the usual appurtenances were granted, and following the habendum clause several restrictions were placed upon the use of the property, among which is found the following:

"Will keep said lane or alley clean and free from all obstructions and ice and snow and will never obstruct or place anything therein, all of which covenants shall run with the land hereby granted."

In April, 1894, Kanaley and wife conveyed by deed said lot No. 13 to Daniel O'Brien and John Hoolihan, "together with all and singular the hereditaments and appurtenances thereto belonging or otherwise appertaining," but without making specific reference to the alley or lane in question. In March, 1899, the said O'Brien and Hoolihan, by their deed, conveyed to the plaintiff herein said lot No. 13, referring to the said "second map," which was stated to be then on file in Oneida county clerk's office and following the description is the language, "and this deed of conveyance is made subject to all the covenants, restrictions and conditions in said (Mathews) deed contained."

In October, 1896, the plaintiff and wife conveyed the same lot No. 13 to one Ringwald, referring to the said map, and making the deed "subject to all the covenants, restrictions and conditions contained in said Kanaley deed."

A few days thereafter Ringwald and wife reconveyed the said lot No. 13 to the plaintiff by the same description and subject to the same covenants, restrictions, and conditions therein contained.

In April, 1894, the said Kanaley and wife by their deed conveyed to one Edward O'Hara, with other lands, said lot No. 9 in block 2; reference being made to said second map with "all and singular the hereditaments and appurtenances thereto belonging or otherwise appertaining" without making any specific reference to said alley or lane.

In February, 1899, the said O'Hara and wife by their deed, reconveyed to the plaintiff herein the said lot No. 9; reference being made to the said map, and the deed containing the usual clause relative to appurtenances.

All said conveyances were recorded in their order.

From the foregoing it will be seen, as it is admitted by the pleadings, that the plaintiff, at the time of the commencement of this action, was still the owner of said lots 9 and 13 in block 2 originally conveyed by Mathews to Kanaley, and the defendant the owner of the said lots in said block conveyed to Norwalk Hat Manufacturing Company.

Shortly after the conveyance by Mathews to the Norwalk Hat Manufacturing Company, the company erected a wooden structure upon the conveyed lands, extending a portion thereof into the lane or alley reserved in the deeds referred to, and since then has covered substantially the whole of said lane by an additional one-story wooden structure, and this is the nuisance that the plaintiff complains of, claiming by his pleadings and proofs that he has a way over the said reserved lands from Erie street to the rear of his lots 9 and 13, and that the alleged nuisance should be abated.

When the Norwalk Hat Manufacturing Company erected its first building, Mathews became or was connected with the company and was also its attorney, and it is claimed by the defendant that the building was put upon the said alley with full knowledge on his part, and I think that the claim is fairly sustained.

Mathews failed, as stated, in August, 1893, making a general assignment to Walter N. Kernan of Utica, and thereafter Mr. Kernan continued to sell lots in said tract, but perhaps not in said block 2, making some deeds in which Mathews' wife united to convey title. After this assignment, it appears that further maps of the tract in question were made and filed, one by the city of Utica as provided by chapter 738, Laws 1897, and chapter 559, Laws 1902, and acts amendatory thereof, for the purpose of selling the same to raise the amount due for taxes that had been assessed against the property, and such proceedings were subsequently had by the city of Utica and the county of Oneida pursuant to said laws that 'all the remaining property of said Mathews, inclusive of the unsold lots in block 2, were sold for taxes and bid off by the board of supervisors of said county, who conveyed the same to said assignee.

Various conveyances of the remaining lots in block 2 have since been made, in which no reservation of said alley is mentioned, nor was any mentioned in the deeds given to said board of supervisors or from the board to said assignee.

[1] Doubt cannot be expressed that when Mathews laid out the tract of land in question with intersecting streets and alleyways, platted and mapped the same showing such streets and alleyways, and made deeds with reference to the map, he intended to impress upon the lots a burden by the way of an easement for the benefit of all who might become purchasers of the same, and, as the parties in question acquired title from the same source, Mathews, their lots became burdened with such easement as was delineated upon the map and was set out in the conveyances. Haight v. Littlefield, 147 N. Y. 338, 41 N. E. 696; Hennessy v. Murdock, 137 N. Y. 317, 33 N. E. 330; Collins v. Buffalo Furnace Co., 73 App. Div. 22, 76 N. Y. Supp. 420.

It has become the settled law in this state that, when the owner of land lays it out into distinct lots with intersecting streets or avenues and sells the lots with reference to such streets, his grantees or successors cannot afterwards be deprived of the benefit of having such streets kept open, and that when in such a case a lot is sold bounded by a street the purchaser and his grantees have an easement in the street for the purpose of access which is a property right. Trustees, etc., v. Cowen, 4 Paige, Ch. 510, 27 Am. Dec. 80; Taylor v. Hepner, 2 Hun, 646, affirmed 62 N. Y. 649; Lord v. Atkins, 138 N. Y. 184, 33 N. E. 1035; Reis v. City of New York, 188 N. Y. 58–70, 80 N. E. 573. The same rule must apply where lanes or alleyways are shown on maps and reference is made to them in conveyances.

But it is said by the defendant that even if the alleyway was laid down on the map, or an easement ever existed over the defendant's lands, it cannot now be enforced, as it has been lost to the plaintiff,

and various defenses to substantiate this proposition have been interposed, the principal of which are the following:

(1) That Mathews, who was seised in fee simple of the lands in the block in question, abandoned the said alleyway, sold and conveyed certain of the lands therein by good title in fee simple; that, if any alleyway ever existed or was contemplated, it was cut off and abandoned by such conveyances, and access to the plaintiff's lands could not be reached over said alleyway; and that plaintiff acquired his title with full knowledge of the said facts and has acquiesced in the abandonment of such alleyway.

(2) That Mathews sold and conveyed some of the lots in said block lying between the lands of the plaintiff and those of the defendant in fee simple, and that by reason thereof the alleyway became impracticable and useless.

(3) That the defendant is guilty of laches in taking proceedings to open said alleyway.

(4) That the expenses of removing the defendant's building from the alleyway would be greater than any profits that the plaintiff would derive from the use of the same.

(5) That there is a defect of parties defendant, in that the owners of other lots between defendant's and plaintiff's lands are necessary parties for the settlement of the claims of the respective parties to the said alleyway.

(6) That the tax sales referred to carried the entire fee in the land free from incumbrances and easements.

[2] The first three of the above defenses may be disposed of together, as they relate to abandonment, the right of the original owner to destroy the easement, and laches in proceedings to open the alleyway. It must be admitted that the restrictive covenants and reservations contained in the Mathews deeds to the respective parties imposed upon their lots a burden which "runs with the land," whether or not they could be strictly called "covenants running with the land," as there are restrictions and reservations annexed to the mere possession of land where privity of estate is of no great consequence. An easement, when once acquired, attaches to the land, and goes with it irrespective of privity into all hands; it being in the nature of an incorporeal hereditament rendering it appurtenant to the estate conveyed and giving to subsequent assignees all the rights and subjecting them to all the obligations which the title or liability to such an easement involves. Gould v. Partridge, 52 App. Div. 40–44, 64 N. Y. Supp. 870.

[3] Abandonment of such easement cannot be lost by mere nonuser for any length of time, but it may be extinguished by abandonment, and nonuser for a period of 20 years, under circumstances showing an intention to surrender the easement, is held to be sufficient to extinguish it. Earle, J., in Snell v. Levitt, 110 N. Y. 595–602, 18 N. E. 370, 1 L. R. A. 414.

The same learned judge says also that:

"Even an abandonment for a shorter period, under such circumstances as showing an intention to give up and release an easement, which is acted upon by the owner of the servient tenement so that it would work harm to him if

the easement were thereafter asserted, would operate to extinguish the easement."

And further:

"Nothing short of an intention so to abandon the right would operate to that effect, unless other persons have been led by such acts to treat the servient estate as if free of the servitude, and the same could not be resumed without doing an injury to their rights in respect to the same."

To the same effect is Corning v. Gould, 16 Wend. 531, 541, 542; Cartwright v. Maplesden, 53 N.. Y. 622; Crain v. Fox, 16 Barb. 184.

Here the conveyance from Mathews to the Hat Manufacturing Company was made in October, 1892, and to plaintiff's grantor in May, 1893, both less than 20 years ago. As has been stated, the Hat Manufacturing Company, soon after it took its conveyance, built upon the alleyway while the lots of the plaintiff were still vacant and while it is apparent that the Manufacturing Company intended to close the alleyway, no evidence was given to show any intention to the same effect on the part of the plaintiff or his immediate grantors; but, in effect, the contrary was shown, as down to the present time, when the plaintiff says he intends to build upon his lots, it does not appear that he had any occasion to use the alleyway. Therefore, under the authorities cited to the effect that nothing short of an intention to abandon the alleyway would operate to that effect unless other persons were led to treat the defendant's servient estate free from the servitude, and no proofs whatever having been given upon this subject, except the mere fact that the defendant had built upon the alleyway, it cannot be said that abandonment has been established. The burden, of course, was cast upon the defendant to make proof of this defense if it could do so, and, failing in this respect, it has, in my opinion, failed to establish either the defense of abandonment, destruction of the right of way by Mathews by conveyances or by laches on the part of the plaintiff. I cannot say that I would not willingly hold these propositions with the defendant, as the alleyway has never been open, and I am not greatly impressed with its usefulness to the plaintiff, but I am dealing with a proposition of law that must so far as can be resolved correctly. Beyond this, the plaintiff is in a court of law insisting upon his legal rights, which seem to be established, and it is not for the courts to deprive him of them.

It was urged on the argument by the learned counsel for the defendant that the expense of removing the defendant's building from the alleyway would be much greater than any profits that the plaintiff could derive from the use of the same, and with this I am also much impressed, and I would gladly award the plaintiff damages in lieu of imposing upon the defendant the expense and hardship of removing the building; but the burden of showing this fact rested upon the defendant, and no proofs upon the subject were given on the trial. Even if such proofs had been given, it may be doubtful if in an action at law any such relief could be awarded; but, be this as it may, the question is not open here for discussion or settlement. Collins v. Buffalo Furnace Co., 73 App. Div. 22–28, 76 N. Y. Supp. 420.

[4] I cannot agree with the counsel for the defendant that there

is a defect of parties defendant, in that the owners of other lots between the defendant's and plaintiff's lands are necessary parties. All the lots in block 2 were by the map referred to subjected to the burden of an alleyway, and all who purchased had notice of this burden, and, so long as the plaintiff has not waived his right to it, it does not seem to me that the other lot owners are in a situation to resist the plaintiff's legal right or to say that he cannot maintain his action against the defendant alone. Very likely upon settlement with the defendant he will be able to make his peace with the other lot owners and thus prevent further litigation upon the subject.

[5] The claim that the tax deeds of both the conveyed and unconveyed lots in block 2, other than those of the plaintiff and defendant, destroyed the easement or servitude imposed upon them, I think cannot be maintained by authority. The purchasers at the tax sales, the county in the one case and Frank H. Clark in the other, could acquire no better title than their immediate grantors or Mathews had or could give; nor, indeed, could Mathews' assignee by allowing the property to go to tax sale and by subsequent purchase by him enlarge his title. All such purchasers took title burdened as the premises were, for, if they did not have actual notice of the situation (of which it must be said the assignee did have), they had constructive notice, as the recording acts clearly apply. Jones on Easements, §§ 118–120; Gibert v. Peteler, 38 Barb. 488; s. c., 38 N. Y. 165, 97 Am. Dec. 785; Bentley v. Gardner, 45 App. Div. 216, 222, 60 N. Y. Supp. 1056.

It is a general principle that a purchaser of land is chargeable with notice of every fact affecting the title which would be discovered by an examination of the deeds of his grantor and of every fact as to which with reasonable diligence he ought to become acquainted. In Cambridge Valley Bk. v. Delano, 48 N. Y. 336, the Court of Appeals said:

"If there is sufficient contained in any deed or record which a prudent purchaser ought to examine to induce an inquiry in the mind of an intelliegnt person, he is chargeable with knowledge or notice of the fact so contained."

Here, as has been shown, the prior deeds of Mathews and the map made by him and delivered to his assignee and on file prior to the time of the tax sales were all sufficient notice to purchasers of the servitude or easement in question. To say that the alleyway could thus be destroyed would be to say with nearly equal propriety that Mathews avenue to its center could also be destroyed, as conveyances of these lots carried the title to the center of the avenue. Hennessy v. Murdock, 137 N. Y. 317, 33 N. E. 330; Matter of Ladue, 118 N. Y. 213, 23 N. E. 465.

The statutes relating to tax sales in the county of Oneida, which provide that the purchaser at such sales obtains an absolute title free from all incumbrances, cannot, in my opinion, go further than to invest the purchaser with the title that the owner of the property had free from liens by the way of incumbrances placed thereon. In other words, it cannot divest a party situated as the plaintiff is here from a property right such as a servitude or easement lawfully acquired prior to the levying of the tax under which the sale was made, and this es-

pecially when he was not made a party to the proceeding. Indeed, to so divest him would, in my opinion, infringe his constitutional rights, in that it would deprive him of property rights without due process of law.

[6] Finally, it is suggested by defendant's counsel that the opening of the alleyway on defendant's land would be useless to the plaintiff, as he has lost the right, if he ever had it, to compel the adjoining owner on the south of him to open it, that, as between himself and the plaintiff, the present owner is not bound by any of the covenants in Mathews' deed, and Korn v. Campbell, 192 N. Y. 490, 85 N. E. 687, 127 Am. St. Rep. 925, is cited as holding that proposition. Korn v. Campbell is not in conflict with the cases on the subject referred to, but is in accord with them. Judge Werner, in writing for the court, in speaking of restrictive covenants in deeds, said that:

"Such covenants may be broadly divided into three classes. In the first class may be placed those which are entered into with the design to carry out a general scheme for the improvement or development of real property. This class embraces all the various plans, generally denominated in the English cases as building schemes, under which an owner of a large plot or tract of land divides it into building lots to be sold to different purchasers for separate occupancy, by deeds which contain uniform covenants restricting the use which the several grantees may make of their premises. In such cases the covenant is enforceable by any grantee as against any other upon the theory that there is a mutuality of covenant and consideration which binds each, and gives to each the appropriate remedy."

He then refers to the other classes and holds that under the facts of that case it did not fall within the first class referred to.

My conclusion is that the defendant's building, so far as it encroaches upon or covers the alleyway in question as to the plaintiff, constitutes a nuisance; that the only damages that the plaintiff has sustained are nominal; and that these damages to the amount of six cents he is entitled to recover and is entitled also to judgment for the abatement or removal of the nuisance referred to, besides costs.

Findings for signature may be prepared accordingly.