## AMERICAN FRUIT PRODUCT CO. v. WARD.

(Supreme Court, Appellate Division, Third Department. May 18, 1906.)

1. GUARANTY—CONTRACT—CONSTRUCTION.

Where, as part of a contract for the sale of the business and assets of a corporation by a transfer of its stock, defendant guarantied to protect plaintiff from all obligations and liabilities not stated in the schedules attached to the inventory, defendant was liable on the guaranty for the services of a chemist, rendered to the corporation before the transfer, which were not included in the liabilities of the corporation in the schedules.

[Ed. Note.—For cases in point, see vol. 25, Cent. Dig. Guaranty, § 38.]

2. SAME—BREACH—ACTION—BURDEN OF PROOF.

Where defendant guarantied performance of a contract for the transfer of all of the property and business of a corporation to plaintiff through an assignment of the corporation's stock, and plaintiff claimed that a horse purchased by the corporation for defendant's daughter, and used in his family, which was not mentioned in the inventory of the property of the corporation, was a portion of its assets, the burden was on plaintiff to establish that the horse belonged to the corporation at the time the inventory was furnished.

[Ed. Note.—For cases in point, see vol. 25, Cent. Dig. Guaranty, § 102.]

3. CORPORATIONS—OWNERSHIP OF STOCK—GIFTS.

Where all the stock of a corporation was owned by defendant and his family, the company was entitled to purchase a horse with its funds for the benefit of defendant's daughter.

4. GUARANTY—BUSINESS OF CORPORATION—TRANSFER—STATEMENT OF LIABILITIES.

Defendant guarantied performance of a contract for the sale of all the property of a corporation, and to furnish a true and full inventory of all its assets and liabilities. At the time the schedules were prepared the corporation was under contract to deliver 2,000 barrels of vinegar to S. & Co., on which $5,000 had been advanced. The advancement was not mentioned in the financial statement of liabilities, but in answer to a

question, 'What contracts have you outstanding?" certain statements of
contracts were appended, one of which recited: "Date March 24, 1902.
H. H. Salmon & Co., New York City, 2,000 bbls. 45 grain cider vinegar
at 10½ cents F. O. B. New York City, bbls. free, to be taken by August 1,
1902. Original selling price 11 cents, deduction ½ cent in consideration
of advancing $5,000." *Held*, that such recital was a sufficient disclosure
of the contract and advancement, within the terms of the guaranty.

**5. APPEAL—ERROR—MODIFICATION OF JUDGMENT.**

A judgment dismissing a complaint will not be reversed to correct an
error of $35, to which plaintiff is entitled where defendant's attorneys con-
sented to a modification of their judgment for costs by a deduction of such
amount.

[Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Appeal and Error,
§§ 4465, 4492, 4498–4505.]

**6. COSTS—EXTRA ALLOWANCE—DIFFICULT CASE.**

The right to make an extra allowance of costs does not depend on
whether difficult questions of law have been litigated, since the case may
be "difficult and extraordinary" though it involve only questions of fact.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Costs, § 624.]

**7. SAME.**

Where, in a suit to recover $48,200, the complaint was dismissed, de-
fendant was not precluded from obtaining an extra allowance of costs
because plaintiff was entitled to a judgment for $35; defendant being still
entitled to full costs.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Costs, § 630.]

Cochrane, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by the American Fruit Product Company against John G.
Ward. From a judgment dismissing the complaint on a referee's re-
port, and from an order granting an extra allowance of costs, plaintiff
appeals. Modified and affirmed.

The action is brought for damages for an alleged breach of guaranty. For
many years prior to February, 1902, John G. Ward & Sons, a corporation, was
engaged in business at Ravena, Albany county, in the manufacture of cider
and cider vinegar. The company owned the real estate upon and the buildings
in which its business was carried on. The capital stock was $50,000, all of
which was owned by the defendant and members of his family. On February
27, 1902, an agreement was entered into between Frank S. Upton, as agent,
with John G. Ward, defendant, in which an option was given to Upton as
agent to take over the entire capital stock of the company for $60,000, such
option to be exercised before the 1st day of June, 1902. In the agreement the
defendant covenanted to furnish to Upton a full and true inventory of all
property and assets of the corporation as they stood on the 1st day of January
of that year, together with true and full answers to the questions annexed to
the contract in relation to the corporation, its property and business and its
assets and liabilities. The defendant further covenanted that he would pro-
cure from the corporation the opportunity for Upton or his assigns, or some
accountant named by him, the privilege of examining the books of account
of the corporation for the five years preceding January 1, 1902. In entering
into such option agreement Upton acted as agent for this plaintiff, which had
been acquiring various properties of like character in various parts of the
country. After the making of the agreement, Upton had an accountant exam-
ine the books of the company and its plant, which examination was made
after he had been furnished with an inventory made up by the defendant, and
with the answers to the questions propounded by Upton, who prior to the 1st
day of June advised the defendant of his intention to exercise and take ad-
vantage of the option, and take the stock according to the agreement. On
May 27, 1902, however, the defendant and Upton met at Rochester for the

purpose of completing the purchase of the stock, and at that time a new agreement was made, by the terms of which the purchase price was reduced from $60,000 to $47,500, and at that time the stock was transferred and the amount agreed upon paid to the defendant therefor. On the same day of the transfer, May 27, 1902, another paper was executed between Upton and the defendant, in which the defendant agreed that the statements theretofore furnished and annexed thereto were correct, and contained a full, true, and complete inventory of all property and assets, including accounts and bills receivable, and all contracts, obligations, and liabilities of J. G. Ward & Sons as they existed on the 1st day of May, 1902. In this agreement Ward guarantied the collection of all accounts and bills receivable set forth in the statement, and annexed to the statement was a guaranty of like tenor and effect, and a further guaranty to save Upton and the American Fruits Product Company, to whom Upton had assigned the agreements, harmless from all obligations except such as are set forth in the statement. The action is brought for an alleged breach of these agreements and covenants on the part of the defendant. In the complaint damages are claimed against the defendant in the sum of $48,200. Among others things, it was there alleged that there was a less quantity of vinegar on hand than shown by the inventory, aggregating upwards of 80,000 gallons; that there was an overvaluation of the stock on hand, amounting to upwards of $37,000; that articles not transferred, including a horse called "Stub," amounted in value to over $800; that accounts uncollectible amounted to upwards of $2,000; and that the plaintiff had been obliged to pay obligations or liabilities not stated in the inventory amounting to $3,121.26, included in which was what was known as the "Salmon" account. The answer was a denial. The case was referred to a referee to hear and determine. The plaintiff furnished no proof with respect to a considerable portion of the claim made in its complaint. The referee found that the papers attached to the contracts and which are carried at length in his report "contained a true and complete inventory of the property of said J. G. Ward & Sons, and all contracts, obligations, and liabilities of said J. G. Ward & Sons as of May 1, 1902; * * * that the property belonging to said corporation, J. G. Ward & Sons, was on the 1st day of May, 1902, free and clear from all liens or incumbrances, except such as were expressly set forth and stated in the schedules or statements constituting a part of said contract; * * * that said papers * * * fairly showed the financial condition of J. G. Ward & Sons on the first day of May, 1902; * * * and that said defendant complied with all the terms of said contract." The referee reported in favor of dismissing the complaint, with costs. From the judgment entered thereon, and from an order granting to defendant an extra allowance of $500 costs, the plaintiff has appealed.

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

James Beck Perkins, for appellant.
Lewis E. Carr, for respondent.

CHESTER, J.    It is conceded by counsel on both sides that the trial presented only questions of fact for determination. After a careful examination of the evidence and the briefs of counsel, I am satisfied that with one exception the referee's findings are sustained by sufficient evidence. The exception relates to the item of $35 for services of one Aschman as a chemist, rendered to said J. G. Ward & Sons before the transfer, and which was not stated in the liabilities of the corporation. The defendant guarantied to protect the plaintiff from all obligations not stated. That amount, which was paid by the plaintiff July 23, 1902, should have been allowed to the plaintiff.

The plaintiff also claimed to recover $150, the value of a horse, which was not turned over to it. It appears that this horse was bought by

J. G. Ward & Sons in 1901 or 1902 for the sum of $150. It was bought for Ward's daughter, and used by his family, although on a few occasions it was used about the factory. The horse was not mentioned in the inventory furnished by Ward, and there is no proof that on May 1, 1902, the horse belonged to J. G. Ward & Sons, nor any proof of its value on that date. The burden was on the plaintiff to show these facts to entitle it to recover its value. All of the stock of the company was owned by Ward and his family at the time the horse was purchased by the company, and no reason is apparent why the company, under such circumstances, could not purchase it for the daughter.

The plaintiff also claimed that the defendant did not include in its list of liabilities the sum of $5,000 for vinegar, which had been paid for in advance by Salmon & Co., and which Ward & Sons were required to furnish to such firm. It is true that in the financial statement of liabilities furnished by Ward this amount was not included, but in answer to the seventh question, "What contracts have you outstanding?" it was said: "According to answer No. 7, we herewith append the following contracts, all due May 17, 1902, except as specified." Among them was the following:

"Date March 24, 1902, H. H. Salmon & Co., New York City, 2,000 bbls. 45 grain cider vinegar at 10½ cents F. O. B. New York City, bbls. free, to be taken by Aug. 1, 1902. Original selling price 11 cents, but, in consideration of advancing $5,000, a deduction of ½ cent is allowed March 24, 1902."

The referee apparently found that that was a statement of a liability. I do not think Upton could have been misled by this statement, for it showed that there was a contract outstanding with Salmon & Co. for the sale and delivery to them of 2,000 barrels of vinegar, to be delivered by August 1, 1902, and that in consideration of advancing $5,000 there was a reduction of ½ cent per gallon made, and the fair meaning of the language is that the advance was made March 24, 1902. The obligation here was not to pay money, but to deliver vinegar, and therefore it was not essential to state the amount of the liability in the financial statement. There is no proof that Upton was in any way misled by the information furnished, or that it was in any way untrue. If he did not know about this liability when he made the contract, the plaintiff should at least have shown that fact upon the trial, and that it was injured thereby. The books of the company had been examined by Ryan, the accountant, who Upton sent to review and examine them. There was an account with the New York office, and in that account that office was credited with $5,055.88 on March 26, 1902, and plaintiff's witness Neville says that credit was the payment by Salmon & Co. The referee had a right to assume from all this evidence that Upton had full and accurate information as to the Salmon & Co. contract, and as to the obligation of the Ward Company to furnish the vinegar in question to them, and therefore that there was no breach, as a matter of fact, of the defendant's guaranty in respect thereto.

With respect to the claim for shortage of vinegar there was a clear conflict of testimony, and the referee was fully justified under the evidence in finding, as he did, that there was no breach of the guaranty in respect thereto.

The other elements of the plaintiff's claim, so far as it furnished evidence in relation to them, seem too plain in favor of the defendant's contention to require any discussion. At any rate, all the claims of the plaintiff concededly presented only questions of fact for determination, and with the exception of the $35 item above mentioned, where there is no evidence to dispute the plaintiff's contention, I do not think we should say that the referee's determination is not supported by sufficient evidence. The judgment dismissing the complaint need not, however, be reversed to correct the error with respect to the $35 item, for we may modify the judgment in defendant's favor for costs by deducting the amount therefrom, if his attorneys who are entitled to such costs so stipulate.

The plaintiff also complains of the extra allowance of $500 costs granted by the court to the defendant. Its counsel urges that there were no difficult questions of law involved in the case. That is clearly so, but an allowance does not depend upon whether difficult questions of law have been litigated, but upon the question whether the case is a difficult and extraordinary one. It may be difficult and extraordinary because of the questions of fact involved, as well as for any other reason. To my mind this was a difficult and extraordinary case for that reason, and therefore we should not interfere with the discretion of the Special Term in granting the allowance. The amount sued for was $48,200, and the complaint was dismissed. The right to have made this allowance to the defendant would not have been affected if the referee had awarded the plaintiff judgment for the $35, as we think he should have done, for that would still have left the defendant entitled to full costs, and consequently to the right to ask for an extra allowance. United Press Co. v. New York Press Co., 164 N. Y. 406, 58 N. E. 527, 53 L. R. A. 288.

Judgment modified by deducting from the judgment in favor of the defendant for costs the sum of $35, and interest thereon from July 23, 1902, upon defendant's attorneys stipulating to such deduction, and, as so modified, judgment and order affirmed, with costs to the respondent. All concur, except PARKER, P. J., not voting, and COCHRANE, J., dissenting.