[2] I think, therefore, that, on the facts as they appeared, the Special Term should have relieved the plaintiff from furnishing further particulars on condition that the examination of Miss Eddy before trial should be had, and upon that examination the plaintiff should furnish to the defendant all the information in its possession in relation to the conditions existing during the fire and immediately thereafter before the goods were stored.

The order appealed from should therefore be reversed, with $10 costs and disbursements, and the motion denied, with leave, however, to the defendant to renew its motion for a further bill of particulars if from the subsequent examination of Miss Eddy it should appear that plaintiff had any further information upon the subject.

McLAUGHLIN and SCOTT, JJ., concur. CLARKE, J., dissents.

LAUGHLIN, J. I dissent upon the ground that plaintiff should have moved for a reargument of the motion which resulted in granting the specific order, or should have appealed from the order, and that it is not competent for another Special Term, on the same facts, to relieve it from any part of the order.

---

ALLEN KINGSTON MOTOR CAR CO. v. CONSOLIDATED NAT. BANK OF CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. June 2, 1911.)

1. FRAUD (§ 58*)—ACTION—SUFFICIENCY OF EVIDENCE—FALSE REPRESENTATIONS.

Evidence, in an action for deceit, *held* insufficient to show the alleged false representations.

[Ed. Note.—For other cases, see Fraud, Dec. Dig. § 58.*]

2. EVIDENCE (§ 318*)—HEARSAY—WRITINGS—PETITION IN BANKRUPTCY.

In an action for deceit and false representations as to the solvency of a corporation, evidence of a petition in bankruptcy filed against the corporation four months later is incompetent, since as to the defendants it is hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1193–1200.; Dec. Dig. § 318.*]

3. EVIDENCE (§ 318*)—HEARSAY—WRITINGS—RESOLUTIONS OF THE RECORDS.

In an action for deceit and false representations as to the solvency of a corporation, evidence of resolutions stated to have been adopted by the directors of the corporation, reciting its insolvency, is incompetent, since as to defendants it is hearsay.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 318.*]

4. APPEAL AND ERROR (§ 1053*)—HARMLESS ERROR—WITHDRAWAL OF OBJECTIONABLE EVIDENCE.

Where counsel, over the protests of opposing counsel, persists in reading a petition in bankruptcy incompetent as evidence, and the court, while warning counsel, does not properly instruct the jury to disregard the evidence, counsel's attempted withdrawal of the evidence does not cure the error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4178; Dec. Dig. § 1053.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. Costs (§ 164*)—Allowance of Additional Costs.
   A simple case for false representations, in which there are no difficult
   questions of law involved or anything extraordinary, except that the
   trial took several days, is not such a case as justifies award of an extra
   allowance.
   [Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 620–636; Dec. Dig.
   § 164.*]

Appeal from Trial Term, New York County.

Action by the Allen Kingston Motor Car Company against the Consolidated National Bank of the City of New York, impleaded with William O. Allison and others. Complaint dismissed as to the Consolidated National Bank of the City of New York, and, from a judgment entered on the verdict, defendants Allison and others appeal. Judgment, so far as appealed from, reversed, and a new trial ordered.

See, also, 128 App. Div. 902, 112 N. Y. Supp. 1121.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Royall Victor, for appellants.
William F. Goldbeck, for respondent.

SCOTT, J. Appeal from judgment against defendants Allison, Chapman, and Lewis, and from an order denying a new trial in an action for damages for deceit and false representations; the complaint having been dismissed as to Consolidated National Bank.

The controversy arises out of the financial difficulties of E. R. and Orlando F. Thomas in the year 1907, and the alleged false statements are said to have been made respecting a corporation known as the New York Car & Truck Company.

The Truck Company was organized in May, 1906, for the purpose of manufacturing street car trucks. It acquired from the Peckham Manufacturing Company a plant at Kingston comprising about six acres of land, with buildings, machinery, etc. Orlando F. Thomas was president; one Steigerwald, vice president and treasurer; and Jos. Tracy, secretary. E. R. Thomas was a director. In June, 1907, the Kingston Motor Car Company was organized by the two Thomases to build motor cars designed by one Moscovics, who became general manager; E. R. Thomas' secretary being president. This company leased from the Truck Company a part of its plant at Kingston. In July, 1907, one Allen, an automobile salesman, made a contract with the Kingston Motor Car Company whereby that company agreed to build motor cars for him. He was to deposit $25,000, of which $250 was to be credited on the purchase of each car. He did put up $16,500 of this amount. E. R. and Orlando Thomas guaranteed the performance of this agreement by the Motor Car Company; such guaranty to remain good unless and until the contract should be taken over by some other company satisfactory to Allen. Allen thereupon organized the plaintiff corporation and assigned the contract to it. E. R. Thomas and Moscovics, with Allen, became directors. Orlando F. Thomas was president of the Consolidated National Bank, to which the Truck Company was indebted for about $61,000,

and he was also president, with E. R. Thomas as vice president, of the Hudson Trust Company, to which the Truck Company was indebted in about the sum of $20,000.

In October, 1907, when the panic had got well under way, the two Thomases resigned from the Bank and Trust Company. The defendant Allison became president of the bank. He had been for years a publisher and had no banking experience, except that he had been a director of the Consolidated Bank. Defendant Chapman, who had previously been a broker with no particular experience in banking, and who had just returned from abroad, was made president of the Trust Company. Defendant Lewis, who had been for many years connected with the Consolidated Bank, having become cashier, now became its vice president. In the meantime the Kingston Motor Car Company had found itself unable to fulfill its agreement to deliver cars to Allen, or plaintiff. It had sent Allen six unfinished cars for purposes of exhibition, and which he held as security for the $16,500 which he had paid. On November 15, 1907, a meeting was held at the Consolidated Bank to devise a plan to carry out the agreement. At this meeting was present Allen, and his counsel, Steigerwald, vice president and treasurer of the Truck Company, and Tracy its secretary; Moscovics, general manager of the Kingston Motor Car Company and director of plaintiff; and Allison, Chapman, and Lewis. At this meeting, after much discussion, it was arranged that the Truck Company should assume the undertaking of the Kingston Motor Car Company to build and furnish motor cars to plaintiff; that plaintiff should put up the balance of the $25,000 to the Truck Company, and should return the six cars which it held in New York. The Truck Company did not carry out this agreement, and in March, 1908, went into bankruptcy. The specific false representations charged against defendants is that at this meeting of November 15, 1907, they falsely stated and represented that:

"The New York Car & Truck Company was a solvent, going concern, in sound financial condition, and in all respects able to carry out the engagements and obligations of the Kingston Motor Car Company under said contract."

Without attempting to analyze the testimony in detail, it is sufficient to say that the evidence is clear that no one at the meeting made the precise statement charged, and neither of the defendants made any statement at all as to the financial condition of the Truck Company. What happened appears to be this: Mr. Allen's counsel was unwilling to allow his client to go into the arrangement without knowing something about the condition of the Truck Company, and thereupon Allison called upon Steigerwald, treasurer of the company, to state how it stood. He stated generally that it was about $30,000 to the good, and afterwards went to counsel's office and made a detailed statement showing a surplus of $30,000.

There is nothing to indicate that either of the defendants made any statement, or indorsed anything that Steigerwald said, or knew anything about the financial condition of the company. Indeed, they, like every one else at the conference, seem to have relied entirely upon

Steigerwald. Respondent, forced by the testimony of its own witnesses to concede that defendants themselves made no representation as to the solvency of the Truck Company, falls back upon the proposition that they are chargeable because they sat silently by and permitted Steigerwald to make a false statement. But there is not the slightest evidence that they knew whether his statement was true or false, and there was no reason why they should have known. They were not interested in the fulfillment of the contract between plaintiff and the Motor Car Company, except as the contemplated arrangement involved a further advance by the Bank to the Truck Company. In point of fact the appellants Allison and Lewis so far believed Steigerwald's statement to be true that they agreed, on behalf of the Consolidated Bank, to advance $25,000 to the Truck Company toward carrying out the agreement of the Motor Car Company with plaintiff. It is true that this promise was only partially performed, and great use was made of that fact on the trial; but this was not a representation as to an existing fact, and the failure to fulfill the promise had no bearing upon the cause of action alleged against the appellants. Much use was also made upon the trial of the fact that, at the time the conference was held, the Truck Company was indebted to the Consolidated Bank and to the Hudson Truck Company, and that this fact and the amount of these debts was not disclosed to plaintiff. We consider this fact to be devoid of significance. The statement given to Allen's counsel showed that the Truck Company owed over $100,000, and in view of the intimate relations of the two Thomases to all of the concerns, which must have been well known to all the conferees, it is scarcely possible that any one present did not know that at least some portion of the Truck Company's indebtedness was to the Bank and Trust Company. Just how much it owed to each was not material.

[1] We are therefore of the opinion that, upon its own evidence, the plaintiff failed to make out a case of representation against any of the appellants. Nor is it entirely clear upon the testimony that the statement made by Steigerwald was false when made, or, if it was, that he or any one else knew that the Truck Company was then insolvent; but it would serve no useful purpose to review the evidence upon that point.

[2] In the effort to show the falsity of the alleged representation as to the Truck Company's solvency in November, 1907, much irrelevant and prejudicial evidence was admitted. Among other things, plaintiff was allowed to read a petition in bankruptcy filed against the Truck Company in March, 1908, four months later. This was clearly incompetent against the appellants, and obviously prejudicial, especially in view of the well-remembered financial conditions in 1907 and 1908. Taylor v. Nichols, 134 App. Div. 787, 119 N. Y. Supp. 1042.

[3] Not satisfied with this, plaintiff's counsel persisted in reading to the jury resolutions said to have been adopted by the directors of the Truck Company on March 4, 1908, reciting the insolvency of the company. This reading was continued in the face of protests by ap-

pellants' counsel, and warnings by the court that the reading might imperil a verdict, until the contents of the resolutions had been thoroughly impressed upon the jury, when counsel undertook to cure his error by withdrawing the evidence. It is apparent that the evidence was wholly incompetent against the appellants, and it is equally apparent that they could not be deprived of the benefit of their objections to its admission by an attempt to withdraw it after the mischief had been done. To make matters worse the court failed to properly instruct the jury to disregard the incompetent evidence.

[4] It is now thoroughly well settled in this state that counsel cannot hope to sustain a verdict induced by grossly incompetent evidence which has been brought to the attention of the jury either through artifice or by persistence in the face of objection (Simpson v. Foundation Company, 201 N. Y. 479, 95 N. E. 10), unless the error has been so completely cured that the court can see that no harm could have resulted therefrom. Such is certainly not the case here. There are other errors in the record which it is unnecessary to dwell upon, because, for the reasons already stated, the judgment must be reversed.

[5] A word may be said, however, as to the granting of an extra allowance. The case was a simple one for damages for false representations. There were no difficult questions of law involved, and nothing extraordinary about the case, except that it took several days to try. It was not such a case as, under the present practice, justified the award of an extra allowance. Standard Trust Co. v. N. Y. C. & H. R. R. R. Co., 178 N. Y. 407, 70 N. E. 925.

The judgment and order must be reversed, and a new trial granted, with costs to the appellants to abide the event. All concur.