JOSIAH T. MILLER, Respondent, *v.* THOMAS· J. CLARY and PATRICK ·S. CLARY, Appellants, Impleaded with GENEVA-SENECA ELECTRIC COMPANY, Defendant.

Fourth Department, November 15, 1911.          ＊·

Water and watercourses — covenant to furnish water power construed — easement — mandatory injunction — construction of covenant by acts of parties — when easement not extinguished by nonuser — when no abandonment of easement — damages for failure to furnish power — counterclaim for damages — costs — extra allowance.

A covenant in a deed whereby the grantor, owning a mill with water power, agreed to furnish the grantees of lands adjacent thereto with power to propel machinery in buildings to be erected on the premises conveyed runs with the land; it is not a personal covenant of the grantor. The covenant was for the benefit of the estate conveyed and created an easement imposed on the property of the grantor which inured not only to the immediate grantees but to their successors in title.

Where after the conveyances the grantor at its own expense erected cables to transmit power to the premises of the grantees there was a practical construction of the covenant by the original parties, and it showed that it was not intended that the grantees should go to the premises of the grantor for power, but rather that the grantor should erect such apparatus as was necessary to convey power to the grantees.

Hence, where a purchaser of the grantor's title repudiated the covenant and refused to continue to furnish power and the means of conveying the same became defective, the grantees, or their successors, are entitled to a mandatory injunction requiring the grantor's successor to convey power to their premises.

As the easement requiring the grantor to furnish power was acquired by grant, it is not extinguished by nonuser.

Nor did the grantees abandon their easements by failing to contribute toward the expense of keeping the machinery in repair, where the successor of the grantor when improving the power plant never requested the grantees to contribute.

The successor of the grantor cannot claim that the grantees forfeited their right to power by allowing debris to accumulate in the tail race, where it itself allowed debris to accumulate in that portion of the race adjacent to its own property; especially so, where there was no notice to the grantee to clear the race where it adjoined their lands.

But in a suit for a mandatory injunction compelling the defendant to furnish power the plaintiff cannot recover money damages for the failure to furnish power, where the evidence of damage is speculative and unsatisfactory and none of the plaintiff's buildings is equipped with machinery or shafting for receiving power.

Nor should the defendant's counterclaim for damages based on an alleged obstruction of the tailrace by the plaintiff be allowed, where the defendant itself obstructed the race and there is no proper basis upon which the damages can be determined.

A suit for the enforcement of said power rights involving intricate questions of law and fact is both difficult and extraordinary so as to entitle the plaintiffs to an extra allowance.

Such allowance may be figured upon the counterclaim of the defendant and upon the easements to which the plaintiff is adjudged to be entitled.

APPEAL by the defendants, Thomas J. Clary and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Seneca on the 13th day of May, 1911, upon the decision of the court, and also from an order entered in said clerk's office on the 29th day of April, 1911, granting the plaintiff an extra allowance.

*Daniel Moran,* for the appellants.

*Charles A. Hawley,* for the respondent.

Judgment and order affirmed, with costs, upon the opinion of·CLARK, J., delivered at Special Term.

All concurred.

The following is the opinion delivered at Special Term:

CLARK, J.:

In June, 1867, the Phœnix Mills of Seneca Falls, a corporation, took title to several parcels of real estate located in the

village of Seneca Falls, together with certain valuable water rights, and among the properties acquired by said corporation were four parcels of land described in the complaint, and which in 1872 were conveyed by the Phœnix Mills, of Seneca Falls, one parcel being conveyed to Michael I. G. Zalinski, another parcel being conveyed to Isaac Desky, another to Chauncey B. Howe, and still another parcel being conveyed to William Johnson, and in this litigation these several parcels are called by the names of the purchasers, viz., Zalinski, Desky, Howe and Johnson.

The Phœnix mills building, in which were located the water wheels which propelled machinery in its factory, was located between Fall street and the center of Seneca river in the village of Seneca Falls, and the four parcels of land in question were further east and fronted on Fall street, extending back southerly to the center of the Seneca river, and on the southerly end of these lots there was a tail race for the flow of water from the mill of the Phœnix Mills Company, and this race emptied into the Seneca river some distance easterly of the lands in question.

In 1872 the Phœnix Mills Company, which owned the Phœnix mills and the valuable water rights referred to, and the lands in question located easterly of its mill property, divided the tract of land lying east of its mill into lots and made some preparation to erect buildings thereon, when it sold the four lots to Johnson, Desky, Howe and Zalinski, as above stated.

The deeds given to these several purchasers contained certain covenants which are substantially alike, the one contained in the Desky deed, immediately following the description of the land conveyed, being as follows:

"Together with sufficient power (subject to the elements) from a wheel in the old Stone Mills or Jewett building to turn a shaft and propel machinery in the basement of any building to be erected on the premises hereby conveyed not requiring more than ten horse power, provided, however, that such machinery shall be confined to the basement stories of such building, and shall not be used elsewhere; nor shall such shaft ever be used for any other purpose than operating machinery in said basement, and provided, also, that said shaft shall be

put up at the sole expense of said party of the second part, and shall be properly connected with the shaft running from said mill and shall be made and put up in a manner to be approved by the said party of the first part. And said shaft and machinery shall at all times be kept in good condition by said party of the second part and shall be operated in a proper and economical manner, and shall be constructed and maintained so as to afford the owner of the adjoining lots on the east a good, safe and convenient connection therewith. And said power is to be used in common with all other persons who shall be entitled to power from said wheel.

" This grant is also made and accepted subject to the following exceptions, reservations, easements and conditions: * * *

" *Second.* It is subject also to the existing tail race of said Stone Mills or Jewett building; and the said party of the first part expressly reserves and excepts a tail race twenty feet wide across and through said premises as at present. And it is further provided and this grant is made and accepted upon the express condition that no obstruction shall ever be placed over, or above, or in said tail race for a space of eight feet above high water mark; but said tail race shall be kept forever open and clear from interference by said party of the second part for a space twenty feet wide from the bottom of the race downwards, and upwards eight feet from and above high water mark, with the free and unobstructed rights of said party of the first part with necessary men and teams, to pass and repass for the purpose of cleaning out and repairing or altering and improving said tail race. But the said party of the second part may erect buildings over said tail race upon reserving and keeping open said channel or space twenty feet wide and eight feet high above high water mark. Said party of the first part shall keep said wheel in said mill in good condition and operate the same economically, *and construct and maintain said shaft of proper dimensions to the west line of said lot, affording said party of the second part a good connection therewith at his west line.* Reserving the right at all times to go on said premises and repair said shaft at the expense of said party of the second part, if the same shall be permitted to be out of repair by said party of the second part. * * *

"And it is further agreed that said party of the second part shall at all times contribute *pro rata* with each of the other parties using the same towards the necessary expense of keeping in repair and maintaining or rebuilding the wheel and fixtures connected therewith in said Stone Mills or Jewett building, used to give said power to said party of the second part."

These covenants in the four deeds are substantially alike, excepting that in the Zalinski deed there is no clause providing that he shall contribute to the expense of keeping the wheel and fixtures in repair, and also the provisions reserving to the first party the right to go on premises and repair the shaft at the expense of second party are omitted from the Johnson deed.

Between the Phœnix mills property, whose lot extended from Fall street southerly to the center of the Seneca river, and the parcels of land which are the subject of this litigation, there had been conveyed certain premises fronting on Fall street, known as the Holley or Pew premises, but the southerly line of these properties was north of the tail race, so that the Phœnix Mills Company owned the lands in the rear of the Holley or Pew premises to the center of the Seneca river, and the lands which are the subject of this litigation were connected by this strip of land in the rear of the Holley or Pew premises with the Phœnix mills or Jewett building, so that the Phœnix Mills Company could transmit power over its own lands from its water wheels in the Phœnix mills building to any structure which might be erected on the lands described in the complaint.

After receiving their deeds, Zalinski, Desky and Howe erected buildings upon their respective lots which extended over the tail race, and later a building was erected on the Johnson lot, but it only extended to the tail race.

Subsequently, by various mesne conveyances, the remaining property of the Phœnix Mills Company was transferred, until finally, in October, 1881, Ellen B. Partridge became the owner of it. Prior to and at that date power had been conveyed from the water wheels in the Phœnix mills or Jewett building to the Howe premises, and thence by a shaft through the Desky premises to the Zalinski premises, and it was being used to propel machinery located in the basement of the building on the Howe lot, and also on the Zalinski property, but power was not used

on the Desky premises, and it was never used on the Johnson lot, the power to these buildings being conveyed by a wire cable which ran over wheels, but which was evidently accepted by the owners of the properties described in the complaint in lieu of a shaft for such transmission as provided in the covenants.

Mrs. Partridge continued to own these premises until August, 1901, when she was adjudicated a bankrupt, and on the sale of the Phœnix mills property by the trustee in bankruptcy the defendants Clary became the owners of the property, the defendant Geneva-Seneca Electric Company, which never answered in this case, occupying a portion of the Phœnix mills property and having power under a lease previously made with Mrs. Partridge.

Mrs. Ellen B. Partridge continued to furnish power under the covenants described in the deeds above referred to over these cables without any objection until July 24, 1889, when she refused longer to furnish it, and absolutely repudiated the covenant, and she never did anything to repair or maintain the cable for transmitting the power after that time although power continued to be conveyed by her to the lots in question up to December, 1889, when the cable became out of repair so that power could not be transmitted over it, and the cable finally fell and was never repaired, and no power has been transmitted in any manner to these buildings since that time from the Phœnix mills.

The plaintiff purchased the Johnson lot in August, 1892, the Desky lot July 6, 1903, the Zalinski lot July 2, 1907, and the Howe lot April 1, 1908.

After the cable got out of repair, Mrs. Gould, plaintiff's predecessor in title to the Howe property, demanded of Mrs. Partridge that she furnish power, which she refused to do, and Mrs. Gould commenced an action in the Supreme Court against Mrs. Partridge, defendants' predecessor in title, to enforce the covenants in the Howe deed, and after Mrs. Partridge was adjudicated a bankrupt the matter was liquidated, and Mrs. Gould's executors received damages from the Partridge bankrupt estate for her failure to transmit power according to the covenants in the Howe deed.

The defendants Clary Brothers, when they purchased the

Phœnix mills properties, March 29, 1905, had knowledge of the covenants in the several deeds above referred to, and in 1908 plaintiff, by written notice, demanded that they furnish power to his properties in accordance with the terms of the covenants in the Johnson, Howe, Desky and Zalinski deeds, and a similar notice was served on the defendant Geneva-Seneca Electric Company, but no attention was ever paid to said notices, and no power has ever been furnished to plaintiff's said premises from the Phœnix mills property by the defendants, or either of them, and plaintiff brings this action, and asks to have the covenants above referred to construed, and that defendants Clary be required to transmit power to his properties in accordance with the terms of these covenants, and for damages for their failure to furnish power heretofore, and defendants deny their liability to perform the covenants in said deeds, claiming that they are personal covenants of the Phœnix Mills Company, and that there is no obligation on their part to transmit the power to plaintiff's lands, although they concede that he is entitled to power from the wheels in the Phœnix mills, but claim he must come there and get it.

Defendants also allege an abandonment by the plaintiff and his predecessors in title of whatever rights they had to the water power because of their neglect to contribute to the expense of repairs to the water wheels, shafting, dam, etc., and that plaintiff and his predecessors in title have allowed various articles to be deposited in the tail race, in violation of the terms of the covenants in the deeds, so that the flow of water has been hindered and thrown back upon the water wheels, and because of that fact plaintiff cannot enforce said covenants, and that defendants are entitled to damages for the said obstructions.

A decision of this case involves the construction of these various covenants contained in the Johnson, Howe, Desky and Zalinski deeds. I am satisfied that these clauses in the several deeds must be construed as covenants running with the lands which were transferred by the Phœnix Mills Company to Messrs. Johnson, Howe, Desky and Zalinski, plaintiff's predecessors in title, and that they related to the enjoyment by them of the lands they purchased of the Phœnix Mills Com-

. pany, that the power covenanted to be furnished by the Phœnix mills to the various parcels of land was a very valuable part of the property purchased for the consideration paid by plaintiff's predecessors in title, and that these covenants not only bound the Phœnix Mills Company, but were equally binding on any subsequent owners of that property, including the defendants, and that they inure to the plaintiff as successor in title of Johnson, Howe, Desky and Zalinski.

By these transfers the Phœnix Mills Company not only granted to the purchasers the four lots in question, but also water power to run machinery that should be placed in the basements of buildings to be erected on them. These covenants to furnish water power in the manner specified in the various deeds from the estate still belonging to the Phœnix Mills Company were to be for the benefit of the estate conveyed and they created an easement in the remaining properties of the Phœnix Mills Company on the north side of the Seneca river for the benefit of the property conveyed — and they inured not only to the original purchasers, Johnson, Howe, Desky and Zalinski, but also to their successors in title, including the plaintiff in this action. (*Nye* v. *Hoyle*, 120 N. Y. 195, and cases cited; *Gould* v. *Partridge*, 52 App. Div. 40.)

The evidence is clear and satisfactory that as soon as the purchasers of these parcels of land had completed their buildings, defendants' predecessor in title, the Phœnix Mills Company, at its own expense, strung a cable and transmitted power from its mills to some of these properties, and that power continued to be thus transmitted until the latter part of the year 1889, and that every owner of the property since these lands were sold, right down to and including defendants' immediate predecessor in title, thus furnished power, so that however obscure and ambiguous the language of the covenants may be, the original parties to the covenants placed upon them a practical construction which cannot be ignored by this court. The intention of the original parties is controlling, and by their acts they construed these covenants to mean that the Phœnix Mills Company, defendants' predecessor in title, was to carry the power to the lands in question, and install some device for that purpose, and there is no evidence anywhere to justify a

finding that it was the intention that the purchasers of the lands, Johnson, Howe, Desky and Zalinski, and their successors in title, should go to the water wheels in the Phœnix mills for their power. The construction placed upon these covenants by the parties themselves was that the Phœnix Mills Company was to take the power to these premises, and not that the purchasers of the lands and their successors in title were to go to the Phœnix mills water wheels and get their power. This practical construction by the parties, which is shown by the fact that the Phœnix Mills Company did erect and maintain this cable from its mills to the properties in question, for the purpose and by means of which it transmitted power, shows clearly and conclusively that the original parties intended that the Phœnix mills were to carry the power to the property sold, and not that the purchasers of the lands were to go to the mills for the power, and that practical construction placed upon these covenants by the parties themselves, must be controlling here. (*Carthage Tissue Paper Mills* v. *Village of Carthage*, 200 N. Y. 1; *City of New York* v. *N. Y. City R. Co.*, 193 id. 543.)

The rights in the deeds in question with reference to furnishing power were acquired by the purchasers of the land by grant, and they cannot be extinguished by non-user. (*Heughes* v. *Galusha Stove Co.*, 133 App. Div. 814; *Welsh* v. *Taylor*, 134 N. Y. 450; *Conabeer* v. *N. Y. C. & H. R. R. R. Co.*, 156 id. 474; *Snell* v. *Levitt*, 110 id. 595.)

Mrs. Partridge repudiated her obligation to convey power in July, 1889, and actually ceased to convey it shortly before the fire in 1890, and there is not sufficient evidence to justify a finding that either the plaintiff or any of his predecessors in title ever repudiated or abandoned these water rights, but on the contrary, the power was transmitted by defendants' predecessors in title up to the time the cable gave out, and it was used in some of the properties described in the complaint, and after the failure of the cable one of the plaintiff's predecessors in title, the owners of the Howe lot, made every effort to compel Mrs. Partridge, defendants' predecessor in title, to furnish power, even to the extent of bringing an action in the Supreme Court for that purpose.

The failure of plaintiff and his predecessors in title to contribute toward the expense of keeping the wheels and fixtures in the Phœnix mills in repair, does not constitute an abandonment of their water rights.

The Zalinski deed did not contain a provision requiring him to make such contribution, and as to the Johnson lot, the owners never used power and could not be required to contribute. Moreover, the undertaking with reference to repairs would not go to the extent of compelling plaintiff or his predecessors in title to contribute to the rebuilding of the Phœnix mills dam, the putting in of additional wheels and making the extensive alterations and improvements that were made by Mrs. Partridge following the fire of 1890. No bill was ever presented to plaintiff or any of his predecessors in title, or demand made for payment or contribution toward any expenses for such repairs and improvements, and surely defendants are in no position to urge now that they must be relieved from furnishing power because plaintiff and his predecessors in title did not contribute toward the expenses of repairs made by Mrs. Partridge in view of the fact that they were never asked to do so. If plaintiff and his predecessors in title had been requested to contribute toward such expenses of repairing and rebuilding the flumes, water wheels and fixtures, and they had refused, there would perhaps be some ground for defendants to urge that plaintiff and his predecessors in title had abandoned these water rights, but under the facts as disclosed by the evidence here, they never having been requested in any way to contribute toward repairs which Mrs. Partridge made of her own volition, after which no power was ever transmitted or attempted to be transmitted to the properties in question, defendants cannot urge that plaintiff and his predecessors in title abandoned their water rights, and this applies as well to failure to contribute to the construction of a new dam across the river, for there is no evidence that plaintiff or any of his predecessors in title were ever asked to contribute toward such expenses.

Considerable evidence was given that certain debris had accumulated in the bottom of the tail race, but from an examination of the samples produced upon the trial and the evidence offered, it is evident that this accumulation resulted largely

from the falling walls after the fire which destroyed the buildings on the properties in question in 1890, and the collapse of the building which had been erected on the Desky lot.

There was also evidence to show that from time to time plaintiff's predecessors in title had cleaned out the race in the rear of their properties, and when it was inspected by the court and counsel, by the consent of all parties, it showed apparently that quite as much debris had been allowed to accumulate in the race in the rear of defendants' property as had been allowed to accumulate in the rear of plaintiff's property, and if defendants themselves had omitted to clean the race in the rear of their property, they are hardly in position to urge now that the accumulation adjacent to plaintiff's property would work a forfeiture of his right to power, or furnish a basis for damages against plaintiff for failure to clean the race and especially in view of the fact that there is no evidence of failure on the part of plaintiff or any of his predecessors in title to clean the race in the rear of their properties on notice to do so, and in view of the further fact that by the terms of the covenants defendants and their predecessors in title had the free and unobstructed right to go on the properties in question with necessary men and teams for the purpose of cleaning out and repairing or altering and improving said tail race.

Upon all the evidence in this case, including the practical construction placed upon the covenants by the original parties to the conveyances, I am satisfied that plaintiff is entitled to be furnished power from the Phœnix mills, now owned by defendants Clary, to his properties known as the Johnson, Howe, Desky and Zalinski lots, and that it is the duty of defendants forthwith to convey said power to plaintiff's said properties, either by shaft, cable or some other device acceptable to the plaintiff to the end that he may, as occasion arises, be enabled to connect with such appliances from the basements of his buildings on the lands in question, and thus be in position to furnish power to any tenants or occupants of his buildings located upon said properties, and that said power should be furnished at all times when power is being used from any or all of the three water wheels located in the Phœnix mills or Jewett building, now owned by the defendants Clary.

Fourth Department, November, 1911.    [Vol. 147.

Plaintiff's claim for damages against the defendants for failure to furnish power must be disallowed, for the reason that the evidence to support it is speculative and unsatisfactory. None of plaintiff's buildings are equipped with any kind of machinery or shafting for receiving power, even if defendants had carried it to his properties, and there is no satisfactory evidence that plaintiff has suffered any material damage by reason of defendants' failure to bring power to his property.

Likewise, defendants' claim for damages against the plaintiff for the alleged obstruction of the tail race in question by which it is alleged defendants' water power has been impaired, must be disallowed, for the evidence to establish damages in behalf of the defendants is speculative and unsatisfactory. It is undisputed that large quantities of debris of various kinds have been permitted to accumulate in the tail race, but that does not apply alone to the section where it passes plaintiff's property; it applies equally as well to that section of the tail race lying westerly of plaintiff's lands where it passes through lands owned by defendants. Ashes, bricks, bottles and other articles have been thrown in the tail race all along both from defendants' property and the plaintiff's, and there is no proper basis upon which any damages could be figured out, for the evidence shows that if the water power has been impaired in any way by reason of obstructions in the tail race, these obstructions are quite as much upon defendants' property as upon that of the plaintiff.

If I am correct in my conclusions as to the covenants in question, it must be adjudged that they are covenants running with the land, and that plaintiff is entitled to judgment awarding a mandatory injunction requiring defendants to convey power to his premises in pursuance of the terms and provisions of the deeds under which plaintiff's predecessors took title to the properties, or by any substituted method, such as by electrical power or otherwise, as may be acceptable to the plaintiff, and that he is entitled to have such power conveyed at all hours when water power is being used in the defendants' premises, formerly known as the Phœnix mills or Jewett block, and that plaintiff should have costs of this action, but that his claim for damages against defendants for their neglect to furnish

power heretofore, and defendants' claim against plaintiff for damages for the alleged filling up of the tail race and consequent impairment of the water power, are in each instance disallowed.

Judgment may be entered accordingly.

The following is the memorandum written on the motion for extra allowance:

CLARK, J.:

This motion should be granted, for the case was both difficult and extraordinary, not only because of the intricate questions of law involved, but also because of the intricate and unusual questions of fact which were involved in this litigation. (Code Civ. Proc. § 3253; *American Fruit Product Co.* v. *Ward*, 113 App. Div. 324.)

The $10,000 counterclaim which was set up by defendants Clary and litigated and disallowed and also the easements to which plaintiff was adjudged to be entitled would each furnish a proper basis for an additional allowance, and under the circumstances and considering the unusual and intricate questions involved here, I think an additional allowance to plaintiff of $500 is just and reasonable.

An order may be entered accordingly.