### COLLIGAN v. CITY OF NEW YORK.

(Supreme Court, Trial Term, Orange County.    December, 1913.)

COSTS (§ 164*)—INSTRUCTIONS—ADDITIONAL ALLOWANCE.

Plaintiff's intestate was killed at the bottom of a deep shaft, which defendant was excavating, by a falling rock, dislodged from the side. It appeared that rocks shot out of the side of the shaft with an explosion, and that there were many precautions taken to prevent injuries. The first trial, resulting in a disagreement, consumed two days, the second three, and the last eleven. In all of them the questions depended largely upon expert testimony. *Held*, that the case was an unusual or extraordinary one within the purview of Code Civ. Proc. § 3253, authorizing an additional allowance.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 620–636; Dec. Dig. § 164.*]

Action by Rose M. Colligan, as administratrix of the estate of James H. Colligan, deceased, against the City of New York upon motion for additional allowance. Motion granted.

See, also, 156 App. Div. 915, 141 N. Y. Supp. 1113.

Benjamin W. Moore, of New York City, and Robert H. Barnett and Albert H. F. Seeger, both of Newburgh, for plaintiff.

Archibald R. Watson, Corp. Counsel, and Josiah A. Stover, both of New York City, and Henry Kohl, of Newburgh, for defendant.

MORSCHAUSER, J. Upon a verdict of $11,000 being rendered in favor of the plaintiff against the defendant, a motion was made for an additional allowance. The action was for the recovery of damages for the death of the plaintiff's intestate, on the ground of the alleged negligence of the defendant and its superintendent.

The deceased was fatally injured by a large rock which shot or fell from the unprotected sides of a shaft which the defendant was engaged in sinking at the town of Cornwall, N. Y. The accident occurred about 10:30 o'clock on the night of January 10, 1911, while deceased was engaged in defendant's service at the bottom of the shaft in the capacity of shift boss or mining foreman. At that time the shaft had been excavated or sunk to an approximate depth of 1,080 feet. The negligence charged against the defendant was that a defect existed in the condition of its ways, work, or plant, and it was claimed on the part of the plaintiff that the defendant did not properly protect and sheet the sides of the shaft, and left the same open and exposed above the bottom of the shaft, so that a large rock fell or shot from the sides thereof, striking the plaintiff, and inflicting fatal injuries upon him from which injuries he died.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plan adopted by the defendant was proper and sufficient, but the plan and method was not carried out, in that the defendant neglected to properly place sheeting for such a space above the bottom of the shaft as was necessary to protect its employés who were at work in the bottom thereof. Negligence was also charged on the part of the mining superintendent who was in charge of the sinking of the shaft. There were three trials. The first trial was in December, 1911, occupying two days, and resulted in a disagreement of the jury. The second trial was held in February, 1913; occupying three days, resulting in a verdict of $11,000 in favor of the plaintiff. On appeal the judgment entered was reversed as being against the weight of evidence and a new trial granted. 155 App. Div. 475, 140 N. Y. Supp. 271. This trial occupied eleven days. At the first trial 16 witnesses were sworn and examined by the parties, 19 on the second trial, and 36 on the third; and on each trial the issues were sharply contested. Several division engineers were sworn on the last trial, and their testimony involved various records and measurements, and the testimony given by these engineers on the former trials were examined at great length requiring much time and examination.

The examination of the testimony of the defendant's engineers and superintendent on the two preceding trials, and the preparation for their cross-examination on this trial, required a great deal of labor, examination, and care. The defendant's proof, as well as the direct and cross examination of the engineers, was largely of a scientific and technical nature, and it was necessary to have recourse to maps, drawings, reports, and other documentary evidence upon the direct and cross examination of these scientific and learned witnesses.

When the shaft was excavated to a depth of about 400 or 500 feet, rocks from the sides thereof began to fall or shoot out at different intervals, and these falling rocks were called by the employés "shooting rocks." As the rock shot or fell from the side of the shaft, it would be followed by a loud report "like a gun on a battleship," as some of the witnesses said. From the place where the rock shot or fell, the place it left, as well as the space around the side of the opening, was covered with a sort of white substance like flour. The deeper the shaft was sunk, the more frequent became the shooting or falling rocks.

This peculiar phenomenon of the shooting or falling rock, so called, from the sides of the shaft for a long time prior to the accident was involved in this action. The manner in which the defendants devised a plan to meet these unusual conditions was to place steel sheeting on the sides of the shaft to protect the miners working at the bottom from injury, and the manner in which this work was carried on, as well as the numerous details after the abandonment of the wooden protection, involved a great deal of examination, study, and care, so that the entire situation became novel and extraordinary. The minutest detail of the excavating of the shaft, as well as the progress of the work, had to be examined fully, and extraordinary care in the details was of the utmost importance, for the proper preparation of the trial by counsel,

and the examination of the witnesses during the trial. This was necessary so as to properly facilitate the trial.

Counsel on both sides had the case well in hand, and therefore there was no interruption during the progress of the trial, because of lack of familiarity with the facts that each side desired to present; otherwise the trial would have taken much longer. This was not an ordinary negligence case; it was difficult and extraordinary and involved something unusual, requiring more than ordinary labor and preparation by counsel.

Howard v. Rome & Turin Plank Road Co., 4 How. Prac. 416, was an action to recover for the building of defendant's road. The trial of the issues was before a referee and occupied four to five days. The plaintiff recovered judgment and was granted an additional allowance. Said the court, at page 416 of 4 How. Prac.:

"This is a clear case for the allowance. The fact that the trial lasted four or five days is enough to render it 'extraordinary,' within the meaning of the statute."

In Fort v. Gooding, 9 Barb. 388, an action against executors to recover on a claim against their testator, 15 or 16 days were occupied before the referee and 33 witnesses examined. The plaintiff was granted an extra allowance. Said the court at page 395:

"But I am of opinion that an action of this kind, which is so defended as to consume 16 days, is an extraordinary case, justifying an extra allowance. The regular fee bill affords no adequate compensation for professional services in such a cause."

In Miller v. Clary, 147 App. Div. 255, 127 N. Y. Supp. 897, 131 N. Y. Supp. 1129, 133 N. Y. Supp. 1101, the plaintiff brought an equitable action to compel the defendant to furnish him power and also for damages, and a counterclaim of $10,000 was also interposed by defendant. Plaintiff succeeded, and an extra allowance of $500 was granted and affirmed by the Appellate Division. Said the court at page 267 of 147 App. Div., at page 1102 of 133 N. Y. Supp.:

"This motion should be granted, for the case was both difficult and extraordinary, not only because of the intricate questions of law involved, but also because of the intricate and unusual questions of fact which were involved in this litigation. Code Civil Procedure, § 3253; American Fruit Product Co. v. Ward, 113 App. Div. 324 [99 N. Y. Supp. 717]."

In American Fruit Product Co. v. Ward, 113 App. Div. 319, 324, 99 N. Y. Supp. 717, 721, affirmed 190 N. Y. 533, 83 N. E. 1122, the plaintiff sought to recover $48,200, damages for alleged breach of guaranty. The case was tried before a referee, who found in favor of the defendant, and the defendant was allowed $500 additional allowance. The order for additional allowance was affirmed. Said the court:

"The plaintiff also complains of the extra allowance of $500 costs granted by the court to the defendant. Its counsel urges that there were no difficult questions of law involved in the case. That is clearly so, but an allowance does not depend upon whether difficult questions of law have been litigated, but upon the question whether the case is a difficult and extraordinary one. * * * It may be difficult and extraordinary because of the questions of fact involved, as well as for any other reason. To my mind this was a diffi-

cult and extraordinary case for that reason, and therefore we should not interfere with the discretion of the Special Term in granting the allowance."

In United Press v. New York Press Co., 35 App. Div. 444, 54 N. Y. Supp. 807, affirmed 164 N. Y. 406, 58 N. E. 527, 53 L. R. A. 288, plaintiff sought to recover for alleged breach of contract, case tried before the court and jury, and by the direction of the court the jury rendered a verdict for the plaintiff for six cents damages and granted the defendant an additional allowance of five per cent. The plaintiff excepted. This judgment was affirmed. The plaintiff contended before the Court of Appeals that the granting of the additional allowance was unauthorized by law, but the Court of Appeals, at page 414 of 164 N. Y., at page 529 of 58 N. E. (53 L. R. A. 288), held "that no error was committed."

Town of North Hempstead v. Oelsner, 148 App. Div. 779, at page 780, 133 N. Y. Supp. 319, at page 320, was an action for ejectment involving difficult and extraordinary questions of fact. Said the court:

"I think that the conclusion of the learned trial court that the action was a difficult and extraordinary one authorizing an additional allowance is sound and should stand. The questions of fact were both difficult and extraordinary, involving the careful research and examination of ancient documents, records, and histories of the seventeenth century and the production by plaintiff of more than 70 exhibits, which of itself, irrespective of the questions of law involved, is sufficient to justify an allowance. American Fruit Product Co. v. Ward, 113 App. Div. 319 [99 N. Y. Supp. 717], affirmed without opinion 190 N. Y. 533 [83 N. E. 1122]. It was within the discretion of the trial court to grant the allowance, and the exercise of such discretion is reviewable only for abuse (Rowe v. Granger, 118 App. Div. 459 [103 N. Y. Supp. 439]; Johnston v. Mutual Reserve Life Ins. Co., 45 Misc. Rep. 316 [90 N. Y. Supp. 539], affirmed without opinion 110 App. Div. 888 [96 N. Y. Supp. 1132]), and the order must stand."

In Rowe v. Granger, 118 App. Div. 459, at page 462, 103 N. Y. Supp. 439, at page 441, said the court:

"Whether this action should be regarded as difficult and extraordinary, within the meaning of section 3253 of the Code, was a question addressed to the discretion of the trial court, and, as was said in Bryon v. Durrie, 16 Abb. N. C. 140: 'The determination of the question usually involves so many considerations which are addressed to the discretion of the judge that the appellate court rarely interferes.' "

As was said in Meyer Rubber Co. v. Lester Shoe Co., 92 Hun, 52, at page 55, 36 N. Y. Supp. 729, at page 730:

"As early as [People v. N. Y. Cent. R. R. Co.] 29 N. Y. 423, it was decided that such applications were addressed to the sound discretion of the judge, who was called upon to carry out the provisions of law upon the subject of allowances. The rule does not seem to have been changed by section 3253 of the Code of Civil Procedure."

As was said by Justice Gaynor, writing for the court in Finan v. N. Y. C. & H. R. R. R. Co., 111 App. Div. 383, at page 386, 97 N. Y. Supp. 859, at page 860:

"*I am not able to agree to the proposition, however, that a trial judge lacks power to grant an extra allowance in negligence cases. Some of them are the most difficult and extraordinary that are tried.*" (Italics are mine.)

There is a line of cases in which the courts have held that the case was not difficult or extraordinary, and among these are ordinary actions for personal injuries caused by negligence. Leonard v. Union Ry. Co., 98 App. Div. 204, 90 N. Y. Supp. 574; Walker v. Newton Falls Paper Co., 111 App. Div. 19–22, 97 N. Y. Supp. 521; Smith v. Lehigh Valley Ry., 77 App. Div. 47, 79 N. Y. Supp. 106; Miller v. Twiname, 129 App. Div. 623, 114 N. Y. Supp. 151; Finan v. N. Y. C. & H. R. R. Co., 111 App. Div. 383, 97 N. Y. Supp. 859; Freemont v. Boston & Maine Ry., 111 App. Div. 831, 98 N. Y. Supp. 179.

The case of Standard Trust Co. v. N. Y. C. & H. R. R. Co., 178 N. Y. 407, at page 410, 70 N. E. 925, at page 926, has been frequently cited. This was a negligence action where an answer had been interposed which under a stipulation by the defendant upon the trial was withdrawn, and the only question for the determination of the court was the amount to be assessed for damages. It was held that the court had no power, under section 3253 of the Code of Civil Procedure, to grant an additional allowance, even assuming that the case was to be treated as fully contested, unless it was "difficult and extraordinary," and, where it appeared that it did not involve the examination and consideration of difficult questions of law, or trouble with reference to making the necessary proof, it could not be regarded as a difficult and extraordinary case. Said the court:

"We are then brought to a consideration of the meaning of the words 'difficult and extraordinary.' We think these are words of limitation, and that the practice of making an additional allowance in every case cannot be sanctioned. In construing this phrase we must give to the words 'difficult and extraordinary' their usual and accepted meaning. *A general rule specifying the precise limitation that they impose upon the power of courts to grant an additional allowance may be difficult to formulate, but their application to the facts of a particular case when presented is not troublesome. A negligence case may arise which may be so difficult and extraordinary as to bring it within the provisions of the statute,* but ordinarily they are neither difficult nor extraordinary. Indeed, they are the most common and numerous of any class of cases which we have in court. In the case under consideration the death of the testator was caused from a collision between two trains under circumstances in which negligence would be presumed on the part of the employés of the defendant upon showing the fact of the collision." (Italics are mine.)

In Harvey v. Fargo, 99 App. Div. 599, 91 N. Y. Supp. 84, it was held improper to grant an additional allowance where damages only are considered.

In Allen-Kingston M. C. Co. v. Consolidated National Bank, 145 App. Div. 294, at page 299, 129 N. Y. Supp. 1070, at page 1074, the case was a simple one for damages for false representation. Said the court:

"There were no difficult questions of law involved, and nothing extraordinary about the case, except that it took several days to try. It was not such a case, as, under the present practice, justified the award of extra allowance."

In Campbell v. Emslie, 188 N. Y. 509, 81 N. E. 458, no extra allowance was granted; the facts were not disputed; and the case was substantially disposed of upon stipulation in a manner favorable to

both parties by reason of a former judgment rendered in another state upon the same cause of action between the same parties.

I believe that this case was a difficult and extraordinary one, and, in the exercise of sound discretion, the plaintiff should be granted an extra allowance of 5 per cent. upon the verdict.